| WOODARD, Judge.
This second degree murder trial originated from events which occurred on September 20, 1993, after which a grand jury indicted Mr. Gobert for second degree murder on November 18, 1993. A twelve- *617 member jury found him to be guilty as charged, and the trial court sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence. However, it later ordered a new trial pursuant to Mr. Gobert’s 1998 application for post-conviction relief. After a second trial, in a 10 to 2 vote, the jury again found him to be guilty as charged, and the trial court sentenced him to life imprisonment without benefits. Mr. Gobert appeals. We reverse and remand the ease to the trial court for a new trial.
# ‡
This litigation originated from events which occurred on September 20, 1993 and led to Mr. Gobert’s grand jury indictment for second degree murder on November 18,1993.
On May 18, 1994, a twelve-member jury found him to be guilty as charged, and the trial court sentenced him to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on June 22, 1994. We affirmed Mr. Gobert’s conviction and sentence. Nevertheless, finding that the State had improperly failed to disclose a witness’ pretrial statement which rebutted another witness’ trial testimony, the trial court granted Mr. Gobert’s application for post-conviction relief and ordered a new trial. We denied the State’s application for supervisory writs, as did the supreme court.
Mr. Gobert’s second trial resulted in a ten-to-two jury vote, finding him to be guilty as charged. Subsequently, the trial court sentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Mr. Gobert appeals.
Is* * * * *
Mistrial
Mr. Gobert contends that the trial court erred when it denied his motion for a mistrial. Specifically, he alleges that in its rebuttal closing argument, the State im-permissibly implied that he had a criminal past or history of violence which it could not explore. He urges that the State could, in fact, have cross-examined him on past acts of violence to rebut his testimony, had there been any. The State responds that, in closing argument, it did not refer to another crime, and thus, there was no support for granting a mistrial.
Near the end of his closing argument, Mr. Gobert’s defense counsel stated:
What kind of person was [Mr. Gobert] anyway? Think about his record. Is he the kind of person who really needs to be segregated from society for the rest of his life? He had no history of violence, no criminal convictions at the time of the offense, he’d written two hot checks, both of them for less than $25. Honorably discharged from the Marine Corps. That’s what this manslaughter statute is for, it’s for a good person who made a mistake under extreme pressure, sudden passion, heat of blood.
Then, beginning with the State’s rebuttal closing argument, the following exchange took place:
The State: [The defense attorney] don’t play fair [sic]. He don’t [sic] play fair. “He says what kind of man was [Mr. Gobert]? He was a good man with no history of violence.” Now, he knows as a lawyer that I cannot introduce any past acts of misconduct on the part of [Mr. Gobert].
Defense Counsel: I object, Your Hon- or.
The State: Your Honor, that’s the law, he said it, I’m allowed to talk about it.
The court: Right. You talked about—
The State: He said, “he’s a great guy; you haven’t heard anything bad about him, no history of violence.” Well, I’m not allowed to introduce any history, whether there is one or not. He knows that. He wants you to think [the Defendant] is a great guy, even though he knows I can’t prove anything |3other than the offense charged. *618 I didn’t charge him with being a bad guy. I charged him with murder.
After the State completed its closing argument, and outside of the jury’s presence, Mr. Gobert moved for a mistrial, in part, because of the State’s alleged inferences of a history of violence. The trial court denied the motion, finding that the references to Mr. Gobert’s background did not constitute grounds for a mistrial.
La.Code Evid. art. 404 provides in part:
A. Character evidence generally. Evidence of a person’s character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character, such as moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.
* * *
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it plans to use at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The State’s remarks referred to La. Code Evid. art. 404(B) — other crimes, wrongs, or acts — which set forth the general rule that evidence of other crimes, wrongs, or acts is inadmissible to prove character, subject to certain exceptions. Comment (l) to La.Code Evid. art. 404 specifies that “[t]he first sentence of Paragraph B sets forth the traditional rule ... that even in those situations where character is admissible to prove conduct, character may not be shown by specific acts.”
14However, Mr. Gobert correctly states that his attorney did ask him, on direct examination, whether he had a history of violence. Thus, the State had the opportunity to rebut this assertion by offering evidence of a history of violence, albeit without evidence of specific acts or crimes. Nevertheless, Mr. Gobert’s counsel further asked him more detailed questions, eliciting responses concerning specific incidents involving bad checks and prior fights in high school. Mr. Gobert also stated that he had a “clean criminal record” with no other criminal convictions, a statement which went beyond a general reference to his lack of a violent past. From this point on, the State had an the opportunity to cross-examine him on specific acts of violence and a criminal record. Despite the State’s extensive interrogation, consuming some twenty-one pages of the record, it did not ask him one question regarding his prior actions or record in order to rebut his assertions.
Mr. Gobert argues in brief that the State misstated the law, because under such circumstances and per article 404(A)(1), it had the opportunity to rebut character evidence, including specific instances of conduct. He further asserts that he predicated his motion for mistrial on La.Code Crim.P. art. 770 which states, in part:
Upon motion of the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in *619 argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
In its rebuttal closing argument, the State clearly referred to Mr. Gobert’s implied history of violence when it stated that it could not “introduce any past acts of misconduct.” It also asserted that defense counsel was not “playing fair,” clearly implying that defense counsel was being dishonest to the jury, concerning Mr. Go-bert’s criminal history, and that Mr. Go-bert did, in fact, commit other illegal acts. While such references might normally be considered harmless beyond a reasonable doubt,[1] in light of the other evidence presented at trial and the fact that the crucial ¿¿evidence in Mr. Gobert’s case consisted almost entirely of Ms. Vanessa Kiel’s, his former wife’s, testimony, his credibility was crucial to his defense. We shall review the State’s remarks in this context.[2]
In the case sub judice, Mr. Gobert voluntarily opened himself to a detailed cross-examination by the State concerning both his character, in general, as well as specific past acts of misconduct. The State chose not to pursue such a line of questioning during trial and, instead, attacked Mr. Go-bert by implication during rebuttal argument. Defense counsel’s closing references to Mr. Gobert’s prior record clearly mirror his direct examination. Certainly, they did not consist of new or improper references to which the State should have been allowed to respond, carte blanche, during rebuttal. And, the State’s allegations that defense counsel “don’t [sic] play fair” proved inaccurate.
The State’s assertions of improper conduct by defense counsel are particularly troubling, because the State itself decided to forgo Mr. Gobert’s cross-examination on this issue. It did not allege, whether at trial,' in brief, or during oral argument before this court, the existence of any such prior misconduct or criminal record. However, the State chose to perfect a damning and unsubstantiated attack upon Mr. Go-bert and his counsel in a trial which resulted in a mere ten-to-two vote. Its course of action clearly and unambiguously improperly implied that Mr. Gobert lied under oath regarding his prior criminal history, which, given the grave importance of his credibility regarding the verdict, we do not find harmless beyond a reasonable doubt.
Accordingly, we hold that the trial court erred when it denied Mr. Gobert’s motion for a mistrial. We reverse his conviction and sentence.
Dismissal as a Sanction
Mr. Gobert next asserts that the trial court erred when it refused to sanction the State before the start of the second trial by dismissing all charges, because the State intentionally suppressed exculpatory evidence in his 1994 trial, hence, violating his right to a fair trial. Mr. Gobert requests that we perfect a remedy not normally available by law; namely, a dismissal of his conviction and all charges as a sanction against the State, should we sanction any further trial errors in this appeal.
|fiThe exculpatory evidence which Mr. Gobert places at issue pertained to Vanessa’s police statement shortly after he shot the victim. At that time, the police recorded her statement that she saw Mr. Gobert- sitting on the victim’s back, holding him in a headlock, putting the gun to his head, and shooting. Mr. Gobert’s videotaped confession reveals that a police officer questioned him about “a witness’s” comment regarding his position relative to the victim, to which he responded that the statement probably came from Vanessa and she was lying. During the 1994 trial, Vanessa testified that she saw the victim *620 lie on his stomach, and apparently, Mr. Gobert released himself from under the victim, then stood up, and shot him in the head. Therefore, Vanessa’s testimony, regarding Mr. Gobert’s and the victim’s relative positions, substantially changed.
Because the State failed to release her original police statement for cross-examination, even after her trial testimony contradicted her previous statement, the trial court awarded Mr. Gobert a new trial, albeit concluding that he was ninety-nine percent sure that this evidence would not have altered the ease’s outcome.
Mr.' Gobert further alleges that the State suppressed exculpatory blood splatter evidence, while admitting to his inability to show that the State acted intentionally. Specifically, Mr. Gobert claims that the State failed to provide him with a lab report dated the day of the jury’s verdict in his first trial, showing that his clothes and boots were tested for blood evidence. However, not only does he fail to show how this entitles him to have his charges dismissed, but the record clearly reveals that he could have utilized such evidence before his second trial.
The State responded that Mr. Gobert benefitted from an adequate remedy by receiving a new trial. It also argues that, should Mr. Gobert’s suggested dismissal remedy become law, his current conviction may not be dismissed because Mr. Go-bert’s argues no violations in this appeal. Finally, the State points to the fact that, even with defense counsel’s possession of Vanessa’s statement in the 2000 trial, the jury still convicted him of second degree murder.
The State may not suppress evidence which proves favorable to the accused and material to either guilt or punishment.[3] Favorable evidence includes both exculpatory evidence and that impeaching a witness’ testimony, when the reliability |7or credibility of that witness appears crucial to his guilt or innocence or when it may have a direct bearing on jury’s sentencing determination.[4]
In State v. Evans[5] we stated:
It is true that suppression of material evidence constitutes a violation of due process justifying a new trial irrespective of the good faith or bad faith of the prosecution; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and, that when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
Mr. Gobert requests that we adopt an extraordinary remedy after two juries found him guilty of second degree murder. Other courts have denied such relief under similar circumstances.
In State v. Laymon,[6] the defendants charged with the second-degree murder of a child in a drive-by shooting perfected a similar argument. The defendants were tried again after their first trial resulted in a mistrial. In their appeal, they argued that the State failed to timely produce exculpatory evidence, allegedly found in a supplemental police report. Before their second trial, the trial court had found no exculpatory evidence but did allow their defense counsel to read excerpts from the report — statements which four witnesses had made — into the record when questioning the police officer to whom the statements had been made. The defendants argued that the State’s actions prohibited them from developing testimony to more *621 effectively challenge another witness’s credibility. They claimed that the State’s withholding of the report prevented them from contacting those witnesses between the shooting and the first trial, for approximately one-and-one-half year, during which beneficial testimony became stale and ineffective.
Reasoning in the following manner, the court found .no merit in the defendants’ argument:
[RInitially, we note that “the late disclosure, as well as the non-disclosure of exculpatory evidence can so prejudice a defendant that he is deprived of his constitutional right to a fair trial....” State v. Landry, 388 So.2d 699, 702 (La.1980), cert. denied sub nom Landry v. Louisiana, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981). However, the declaration of a mistrial in the 1995 trial suggests that that trial was fair and did not violate defendants’ due process rights. The question before us then becomes whether defendants’ second trial was fair. In considering this question, we are mindful both of defendants’ claims regarding the staleness and unavailability of witness testimony and the fact that they had access to the alleged Brady material for one year prior to the second trial.
This latter fact is particularly harmful to defendants’ claims. Defendants had a fair opportunity to procure and interview witnesses prior to the second trial, as the appearances by Lydell Jones and Zacadia Scott indicate. The trial court’s power to compel testimony via subpoenas was available for this purpose. And assuming that the problem of stale testimony did affect defendants’ case, it may have affected the State’s case as well. In sum, given that defendants were able to find and present more testimony than they presented at their first trial, it does not appear that the State’s earlier withholding of the report led to an unfair second trial.
Moreover, there is persuasive authority for the proposition that the proper remedy for a Brady violation is a new trial at which the defense has access to the withheld material. In State v. Brooks, 551 S.W.2d 634 (Mo.Ct.App.1977), cert. denied sub nom Brooks v. Missouri, 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978), the defendant was indicted for robbery and assault and convicted after a trial in 1972. However, the conviction was reversed on appeal, prompting a new trial that was held in 1974. Due to improper commentary by the prosecution, a mistrial was granted; and a third trial was held in 1975, after which the defendant was convicted again. In one of his assignments of error in the subsequent appeal, the defendant contended that the trial court erred in not granting a judgment of acquittal im the first two trials because he had not been given the benefit of a witness’ grand jury testimony which partially conflicted with the witness’ testimony at the 1972 and 1974 trials. The witness did not testify at the 1975 trial and was thus not cross-examined about his grand jury testimony. „
“The thrust of these contentions,” the Missouri Court of Appeals wrote, “is that the defendant should be discharged and these proceedings be’ reversed because the State failed to provide the defense with the grand jury testimony ... prior to the 1972 trial and thus violated the principles of due process under the principles of [Brady v. Maryland ].” 551 S.W.2d at 654. The court found no merit in the defendant’s contentions, though, and in the following relevant passage wrote:
19[A]ssuming that the testimony of [the witness] in the 1972 and 1974 trials was contradictory and inconsistent with his grand jury testimony, the failure to provide favorable evidence would not, as appellant contends, entitle him to a complete discharge. In none of the decisions [citing, inter alia, Brady and Giglio ] *622 which has [sic] dealt with the suppression issue was the defendant entitled to an outright discharge. In the event of failure to disclose favorable evidence a defendant at most is entitled to a new trial. But appellant had a new trial in 1974 and at that time he had the grand jury testimony. [The witness] was cross-examined concerning it. That trial ended in a mistrial at the conclusion of the State’s case. Appellant was then tried again in 1975. Hence he was furnished with such testimony and the principles of Brady and its progeny were not violated.
We conclude that the appellant is not entitled to be discharged.
Id. at 655 (emphasis added).
Similarly in the instant matter, defendants had access to the disputed material not only for part of their first trial but also for one year prior to their new, second trial. In effect, the mistrial and award of a new trial cleansed any prejudice that had accumulated against defendants; and we therefore do not find a reasonable probability that the outcome of the second trial would have been different if the evidence had been disclosed at an earlier time prior to the first trial.[7]
(Footnote omitted.)
Similarly, in the instant case, Mr. Go-bert’s use of Vanessa’s previous statement in his 2000 trial appears to have properly remedied any violation attributable to the State from thé 1994 trial and has “cleansed any prejudice” against him.
Nevertheless, although applying under limited circumstances, we found authority supporting the relief that Mr. Gobert seeks. In State v. Kyles, 97-2660 (La.App. 4 Cir. 1/21/98); 706 So.2d 611, the court held that the inherent power of Louisiana courts includes the power to dismiss the prosecution in order to insure that “fundamental justice is done.” In that case, the defendant faced trial on the same charges for the fifth time, due to appellate decisions and deadlocked juries. At the conclusion of the fourth trial, defense counsel re-urged a previously denied motion |into bar the proceeding, claiming that fundamental fairness dictated that no further action be taken against the defendant. The trial court had denied the motion before the start of the fourth trial, for which the defendant did not seek review.
Thereafter, the Kyles court reviewed the denial of the re-urged post-trial motion and stated that such a motion to dismiss charges should be presented to the trial court for disposition before the start of the trial at issue, should include a consideration of the trial court’s various enumerated factors, and was reviewable by the appellate court for abuse of discretion. It also held that “Louisiana courts have the inherent authority to dismiss a prosecution on the basis of fundamental fairness, but a trial court’s decision to not proceed accordingly should not be reversed absent a gross abuse of discretion.” Id. at 614.
In the instant case, Mr. Gobert did not re-urge his motion following the second trial, as did the defendant in Kyles. Mr. Gobert did petition for such relief before the start of the second trial but did not seek review of the trial court’s denial, either at the time of the ruling or in brief to this court. Instead, he raises the issue as a requested remedy in the event this court should set aside his current conviction. Therefore, consideration of this potential remedy is premature, and he must seek relief in the trial court prior to seeking review in this court.
Although we are compelled to reverse and remand this case to the trial court for a new trial because of the State’s inappropriate conduct, we are deeply concerned with its abuses and improprieties in this case, which cast a shadow on the integrity of our criminal process, as well as wastes valuable resources of our judicial system.
*623 CONCLUSION
We find that the trial court erred when it denied Mr. Gobert’s motion for a mistrial. We reverse Mr. Gobert’s conviction and sentence and remand this ease to the trial court for a new trial.
REVERSED AND REMANDED.

. See State v. Johnson, 94-1379 (La. 11/27/95); 664 So.2d 94.

. See Id.

. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963).

. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).

. 98-1850 (La.App. 3 Cir. 5/5/99); 734 So.2d 866, 872, writ denied, 99-1616 (La. 12/17/99); 751 So.2d 871.

. 97-1520 (La.App. 4 Cir. 3/15/00); 756 So.2d 1160.

. 756 So.2d at 1170-71.