COURT OF APPEAL, THIRD CIRCUIT

KH02-771

STATE OF LOUISIANA

VERSUS

STEVEN D. GOBERT

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NUMBER 14100-93
HONORABLE FRED R. GODWIN, DISTRICT JUDGE

**********

**BILLIE COLOMBARO WOODARD**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Michael G. Sullivan, and Billy Howard Ezell, Judges.

**WRIT DENIED.**

Robert Richard Bryant, Jr.
District Attorney
Post Office Box 3206
Lake Charles, Louisiana 70602-3206
(337) 437-3400
Counsel for State/Respondent

Mathew D. Henrich
900 Ryan Street Suite 700
Lake Charles, Louisiana 70601-9405
(337) 433-1718
Counsel for Defendant/Applicant

WOODARD, Judge.

We must consider whether the Defendant, Steven D. Gobert, who entered a plea of guilty to criminal charges of manslaughter and attempted manslaughter, may assert a double jeopardy violation when he knowingly and intelligently entered a plea that raised double jeopardy concerns.  We deny the Defendant's writ.

\* \* \* \* \*

The trial court convicted Mr. Gobert on May 18, 1994 for committing a second degree murder and, later, sentenced him to life imprisonment.  On appeal, this court found that the State withheld evidence that was favorable and material to his defense.  Accordingly, we overturned his conviction.[1]

After a second trial of this matter, the trial court found him guilty of second degree murder and sentenced him to life in prison.  Once again, this court reversed his conviction due to the State's prejudicial comments made during its rebuttal-closing argument.[2]

On October 18, 2001, a few days before the third trial of this matter, Mr. Gobert pled guilty to one count of manslaughter, a violation of La.R.S. 14:31, and one count of attempted manslaughter, a violation of La.R.S. 14:27.  Under the plea agreement, he received a sentence of forty years on the conviction for manslaughter and twenty years on the conviction for attempted manslaughter.  The sentences were to run consecutively.

In his "Motion to Correct or Modify Illegal Sentence," filed on November 7, 2001, Mr. Gobert contends that he illegally received multiple punishments for the same offense.  The trial court denied this motion on March 20, 2002.  In its written reasons for the denial, it states:

> It is true that the manslaughter and attempted manslaughter in this case involved the same deceased victim, and occurred on the same day.  Defendant's motion could have merit but for the fact that his current

---

[1]*State v. Gobert*, 98-1996 (La.App. 3 Cir. 1/29/99), *writ denied*, 99-389 (La. 6/4/99), 743 So.2d 1254.

[2]*State v. Gobert*, 00-924 (La.App. 3 Cir. 2/28/01), 780 So.2d 616.

convictions and sentences were pursuant to a plea agreement, to which he was a fully informed defendant.

Later, Mr. Gobert filed an application for post conviction relief in which he asserts that his conviction and sentence for attempted manslaughter violated his constitutionally protected right against double jeopardy. On May 29, 2002, the trial court denied his application for post conviction relief for the same reasons it assigned on March 20, 2002: "[T]he sentences were imposed on the basis of a plea agreement which the Defendant fully understood and which benefitted him significantly, and of which he cannot now be heard to complain."

Mr. Gobert believes the trial court should have granted him post conviction relief. Specifically, he asserts that it erred: (1) in failing to grant him post conviction relief because convicting him of, both, attempted manslaughter and manslaughter violates the double jeopardy clause of the federal and state constitutions;[3] (2) in convicting him of, both, manslaughter and attempted manslaughter when the facts indicate that the crime arose from one victim and one event; and (3) in convicting him of attempted manslaughter when no factual basis exists for his attempted manslaughter conviction independent of the factual basis given for his manslaughter conviction and when he never, unequivocally, plead guilty to attempted manslaughter.

On the other hand, he is not challenging his manslaughter conviction. As such, he requests that we reverse his attempted manslaughter conviction and affirm his manslaughter conviction.

We will address the Defendant's interrelated assignments of error together. Essentially, each is based upon his assertion that the trial court's sentence of forty years on the conviction for manslaughter and twenty years on the conviction for attempted manslaughter constitutes a double jeopardy violation because it is giving him multiple punishments for the same conduct.

\* \* \* \* \*

---

[3]U.S. Const. amend. V; La.Const. art. I, § 15.

2

In post conviction matters, the petitioner has the burden of proving that the trial court improperly denied him relief.[4] Therefore, Mr. Gobert must prove that a double jeopardy violation occurred in relation to his guilty plea.

In *State v. Love*, this court explained:

> Both the Fifth Amendment to the United States Constitution and Article 1, § 15 of the Louisiana Constitution guarantee that no person shall be twice placed in jeopardy for the same offense. *The purpose of these provisions is to protect* a person from a second prosecution after he has already been acquitted or convicted of that offense and also to protect *an accused against multiple punishment for the same conduct*.[5]

(Emphasis added.)

Review of a double jeopardy claim is limited to the charging documents and plea colloquy.[6]

Originally, the bill of indictment charged Mr. Gobert with second degree murder. On the day of his plea, the State amended the bill to reflect the charges of manslaughter and attempted manslaughter. The bill does not, however, contain any additional information on the particular circumstances of the crime. At the guilty plea hearing, the trial court asked for a recitation of the facts to support a guilty plea, only, for manslaughter:

> **THE COURT:**
>
> Okay. Briefly, Mr. Gobert, what did you do to be guilty of manslaughter?
>
> **THE DEFENDANT:**
>
> I engaged in a heated argument and a fight with the victim, John Kirkley, and during the course thereof, I shot him one time in the head.

---

[4]La.Code Crim.P. art. 930.2.

[5]602 So.2d 1014, 1020 (La.App. 3 Cir. 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969); *State v. Vaughn*, 431 So.2d 763 (La.1983)).

[6]*State v. Arnold*, 01-1399 (La. 4/12/02), 816 So.2d 289.

**THE COURT:**

All right.

**THE DEFENDANT:**

And, he subsequently died from those wounds.

The Defendant gave no separate factual basis for his attempted manslaughter conviction. A review of the entire plea colloquy reveals that the State, merely, charged him with manslaughter and attempted manslaughter in order to reach a term of imprisonment that was amenable to him and the victim's family. The plea agreement is accurately set forth beginning with a summary of the agreement by Defendant's attorney, Randall Hart:

**MR. HART:**

Your Honor, at the outset, I want to say on behalf of Mr. Gobert, we recognize the impossibility of being convicted of the charge of attempted manslaughter, and manslaughter, if he were to be tried on that issue. However, this is a settlement, or a plea agreement, whereby Mr. Gobert will not have to face trial on the charge of second-degree murder which, of course, holds the awful sentence of mandatory life in prison, without benefit of parole.

The concurrence of Assistant District Attorney, Donald Guidry, immediately follows Mr. Hart's summary of the agreement:

**MR. GUIDRY:**

And on behalf of the State, Judge, as you are aware, this case has been tried twice and was scheduled this -- I think, this past Monday, to be tried again, but was continued.
The State has met with the victims -- the victim's family, and discussed this matter, and have discussed this matter with the defendant, as well as his lawyer, and reached an agreement. All parties have reached an agreement to resolve this matter.

Next, the court conducted a Boykin examination, after which the following discussion took place:

4

**THE COURT:**

Now, I think at this point -- I know that the proposal here has to do with the concept of recording this as a -- accepting it as a plea of guilty to the manslaughter and to attempted manslaughter. I think I would like for counsel to elaborate on the record, all the basis and the concept of the recommendation. You said some of that in the beginning, but I would like to get in here, right now.

You know, just as to what the -- what was sought to be done by this, and why you are doing this.

**MR. HART:**

Randall Hart representing Steven Gobert. In discussions with the victim's family, the concept of Mr. Gobert pleading to a charge less than second-degree murder was discussed, and the only terms that were acceptable to the victim's family, would be under those terms which would require Mr. Gobert to serve a minimum of 20 years in the penitentiary.

If he were to be given a sentence of 60 years under the law applicable at the time of the offense, he would be entitled to serve two-for-one, plus his good-time credit would reduce the sentence further to 20 years minimum. At that time, he would be eligible for parole, after serving 20 years. It doesn't necessarily mean he would be released --

**THE COURT:**

-- Right.

**MR. HART:**

-- after 20 years of time in the penitentiary, but he would be eligible for parole.

Under those terms and understandings, the family agreed to that type of sentence. In order to get a 60-year sentence, it was necessary to stack the charge of manslaughter and attempted manslaughter.

**MR. GUIDRY:**

Judge -- I may stand corrected on this -- but I think what Mr. Hart meant was that we did reach an agreement with the family. As we indicated, this thing has been tried twice and we were set to try this again October 15.

Mr. Hart and I are diligently trying to resolve this matter with all the parties involved. We talked to the family. The family is involved and we reached the agreement with the 60 years.

And it's my understanding that back at that time, the defendant would become eligible for parole after serving one-third -- no dealing with the two-for-one -- He would be eligible for parole after serving one-third of his sentence, which would be 20 years.

That is how we reached the agreement for the 60 years, and the reason for it.

**MR. HART:**

That's correct, your Honor. If Mr. Gobert were to behave well in the penitentiary, he would also be entitled to two-for-one, which would mean release after 30 years.

**THE COURT:**

Right. Well so in essence, it appears -- in essence what's desired here is, from both the State's interest and the defendant's interest, was to reach the result of 60 years of DOC time, which would carry with it the expectation that he, thus, would not get out any sooner than 20 years.

**MR. GUIDRY:**

That is correct, your Honor.

**THE COURT:**

With credit for time served.

**MR. GUIDRY:**

That is correct, Judge.

**THE COURT:**

Mr. Gobert, I know we've been over this several times, and Mr. Hart, who is a very highly competent attorney, but you've thought about this a lot, I'm sure.

**THE DEFENDANT:**

Yes, sir, I have.

**THE COURT:**

And, you know -- if I accept this and impose it, you will have -- if I accept it and impose it, you will be looking at a total time of 20 years with credit for time served. And, you're not guaranteed to be paroled after 20 years. Do you understand that?

**THE DEFENDANT:**

I understand that. It just means eligibility.

**THE COURT:**

But, the only thing it does mean is that under the law at that time, you would be eligible for parole after 20 years.

**THE DEFENDANT:**

Yes sir.

At this point, there was a discussion about the applicability of good time credit, which is not materially relevant to the subject motion. The colloquy ends as follows:

**THE COURT:**

Well, back to the recommendation. It's an unusual situation. In my thinking about it, too, Mr. Gobert -- of course, I'm sure you've thought about the fact that even with this long sentencing time, you are avoiding the possibility of a life sentence.

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

And, I suppose that even though they found errors in the trial, having been convicted by two juries, I expect you had some real concern about -- that you might get convicted again and be subject to a life sentence.

**THE DEFENDANT:**

Definitely; yes, sir.

**THE COURT:**

It was mentioned to me yesterday that you were thinking about presenting something like this -- and the thoughts I had about it in the meantime were that -- as far as -- these are maximum sentences on both offenses, leaving aside the issue of the viability of having a conviction on these two counts out of the same transaction, which I think -- I'm satisfied can be done under these circumstances as part of a plea agreement, because from -- and I inject this into it, just in my thoughts are that from my general understanding and from what I've read through the years, in those cases where someone is fortunate enough to get a life sentence without parole, changed by the Pardon Board, the typical way that it happens is that it's -- usually the sentence is reduced to 60 years, and then let them out on parole. That's -- I know that there's a lot of cases that get handled that way. I say a lot -- through the years.

7

In my thoughts, what the result here is that I think there is a real benefit to Mr. Gobert to resolve this in this manner, and avoid the exposure to a life sentence, because he has no assurance of the ability to get there without parole removed.

Whereas in this instance, you have a known quantity of what you can expect. I can understand the value to you, so I certainly -- I will approve the -- what's been recommended, and accept the plea of guilty as tendered to these facts.

The State admits that a review of this plea colloquy clearly reveals, on its face, a violation of the Defendant's right to be protected against double jeopardy. We agree.

**WAIVER**

Nonetheless, the State asserts that the Defendant's rights were not violated, given that he knowingly, voluntarily, and intelligently waived his double jeopardy claim during the plea proceedings.

Generally, a guilty plea is considered a waiver of all non-jurisdictional defects and courts usually only review them to ensure that the plea was both counseled and voluntary.[7] An exception to this rule exists for double jeopardy violations.[8] A plea of guilty (or plea bargain) does not preclude a double jeopardy challenge when the violation is apparent on the face of the record.[9] However, in *United States v. Broce*, the United States Supreme Court noted an important qualification to this rule when it stated: "We do not hold that a double jeopardy claim may never be waived."[10]

In the instant case, it is undeniable that the Defendant and his counsel recognized the double jeopardy violation inherent in the plea agreement; nevertheless, Mr. Gobert prudently agreed to plead guilty because it provided a substantial benefit to him—the avoidance of a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension.[11] It is also important to recognize

---

[7]*Id.*

[8]*Id.*

[9]*State ex rel. Adams v. Butler*, 558 So.2d 552 (La.1990).

[10]488 U.S. 563, 575, 109 S.Ct. 757, 765 (1989) (citing *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241 (1975)).

[11]La.R.S. 14:31.

8

that the likelihood that the trial court would eventually convict him of second degree murder was high, given that it had done so twice before, even though, both were subsequently reversed.  Furthermore, Mr. Gobert confirmed that he considered this likelihood before he agreed to this plea bargain.

Especially noteworthy is that all the parties, including the victim's family, negotiated for this plea agreement so they could be sure that Mr. Gobert would receive a particular sentence.  In fact, his counsel, Mr. Hart, explained to the trial court that the reason for this unusual plea agreement was to ensure that Mr. Gobert would serve at least twenty years in prison.

The *Broce* Court held that the defendants' guilty plea foreclosed their double jeopardy challenge when they failed to call into question the knowing, voluntary, and intelligent nature of their plea.[12]  Like Mr. Gobert, the defendants in *Broce* alleged that their counsel did not discuss double jeopardy issues with them before they entered their pleas, and, as a result, they had not considered the possibility of raising a double jeopardy defense before pleading.  They also argued that, under the circumstances, a court could not hold that they waived their right to raise a double jeopardy defense since there was no intentional relinquishment of a known right or privilege.[13]  However, the Court responded by stating:

> Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty. Waiver in that sense is not required. . . .
>
> . . . .
>
> . . . Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty. The trial court complied with Rule 11 in ensuring that respondents were advised that, in pleading guilty, they were admitting guilt and waiving their right to a trial of any kind.  A failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea.[14]

---

[12]*Broce*, 488 U.S. 563.

[13]*Id.*

[14]*Id*. at 573-74.

9

Similarly, the record before this court clearly establishes that Mr. Gobert was fully aware of the fact that these charges raised double jeopardy concerns before he entered his plea of guilty, despite the fact that the trial court never explicitly told him he was waiving his right to raise a double jeopardy defense at a later time. Furthermore, we must note that he had the opportunity to challenge the theory of the indictments, instead of pleading guilty, but when he chose not to do so, he relinquished that entitlement.[15] Moreover, the record suggests that Mr. Hart's sole interest was to fashion a plea bargain yielding a certain sentence that Mr. Gobert wanted, and that Mr. Hart, as well as the State, expended a great deal of effort crafting a plea to satisfy their sentencing objective, which was, ultimately, achieved.

Therefore, fundamental fairness dictates that Mr. Gobert, who knowingly and intelligently entered a plea that raised double jeopardy concerns, cannot attack the validity of that plea. Thus, we find that he waived his right to attack its validity.

## CONCLUSION

The trial court correctly denied the Defendant's application for post conviction relief.

**WRIT DENIED.**

---

[15]*See Id.*