797 So.2d 778 (2001)
STATE of Louisiana, Appellee,
v.
Jerry W. MUNHOLLAND, Appellant.
No. 35,941-KA.
Court of Appeal of Louisiana, Second Circuit.
October 12, 2001.
*779 Stephen A. Jefferson, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Penny W. Douciere, Kenneth D. Wheeler, Assistant District Attorneys, Counsel for Appellee.
Before WILLILAMS, GASKINS and KOSTELKA, JJ.
WILLIAMS, Judge.
The defendant, Jerry Munholland, pled guilty to driving while intoxicated ("DWI"), third offense, a violation of LSA-R.S. 14:98. Thereafter, defendant was sentenced to serve three years imprisonment at hard labor. The defendant now appeals. We affirm.

FACTS
The defendant was charged by bill of information on June 19, 1999 with DWI, third offense, which occurred on April 17, 1999 in Richland Parish. The bill of information alleged two predicate convictions of DWI:
(1) March 21, 1996: State of Louisiana, Parish of Ouachita, Fourth District Court, and
(2) June 29, 1998: State of Louisiana, Parish of Ouachita, Fourth District Court.
On December 21, 1999, the defendant filed a motion to quash the bill of information, alleging, in pertinent part, that the June 1998 conviction "is constitutionally defective because there is an insufficient inquiry and colloquy between the defendant and the presiding judge."
Parts 4 and 5 of the defendant's motion to quash read as follows:
4.
The transcript of the guilty plea shows that the Trial Judge advised Mover of certain constitutional rights, however, the Trial Judge failed to ascertain:
a) Whether or not the Defendant understood each constitutional right; and
b) Whether or not the Defendant waived each constitutional right.
5.
Mover shows that after the Trial Judge informed Mover of said rights, there was no affirmative showing by Mover, nor was there a response by Mover, that he understood and wanted to waive his constitutional rights.
The evidence submitted, including the court minutes and transcript of the June 1998 guilty plea, shows that the defendant was not represented by counsel while entering his guilty plea. However, the defendant has not challenged the propriety of his waiver of counsel. Thus, the only issue presented for our review is whether the defendant made a knowing and voluntary waiver of his Boykin rights during the 1998 plea colloquy.
*780 The pertinent part of the plea colloquy reads as follows:
Q: Do you understand today's an arraignment session and normally people plead not guilty today and then come back in a couple of two or three months and then they change their plea to guilty. You don't have to plead guilty today or any other day for that matter.
A: No. I want to go ahead and get it behind me.
Q: Alright.
A: That way I can work on it.
* * * *
Q: Okay. You're charged with DWI, driving under revocation, and improper lane usage resulting from a stop back in November. You took the chemical test and your results were .189. And of course if they're higher than .10 then you're presumed to be under the influence. Don't matter if you had two beers or twenty. You're telling me you want to plead guilty to DWI-first offense. You know what that is?
A: Yes, sir.
Q: Operating a motor vehicle on a public highway of this parish and state while under the influence of an alcoholic beverage. By pleading guilty you're giving up your right to a trial before a judge, you're giving up your presumption of innocence, you're giving up the right to subpoena witnesses on your behalf to testify for you if there were any, you're giving up the right to cross-examine the arresting officer that stopped you. It looks like it was a parish deputy ... a sheriff's deputy, Gene Caviness. He and anybody else that might have assisted in the arrest would be summoned to testify. And if you didn't have an attorney, then you could ask the officer questions about why he stopped you and how you did on the field sobriety and all of those other things. By pleading guilty you give up those rights. You give up the right to remain silent. You couldn't be made to testify against yourself. You give up any right to question why the officer stopped you in the first place-probably because of improper lane usage. You might have made a lane change without signalling (sic) or you might have gone back and forth or some other thing that might have given you.
A: I know why he did it.
Q: Why did he do it?
A: On Highway 51 it's got a real sharp curve back to the left. And that improper lane says do not enter.
Q: You crossed over into the other lane?
A: Everybody in the world does it when ... that lives down there in there. But it's just one time I got caught doing it.
Q: Okay. Well, that's a pretty honest way of looking at it. If I determine that there was a good reason for him to stop you, that would be enough for him if he had suspicion that you had been drinking to make you ... ask you to do field sobriety and chemical tests and then the whole bit. Do you understand what the penalty for DWI is? It's going to be a Five Hundred Dollar ($500.00) fine and a sixty ... a hundred and twenty days suspended because this is not a true firstand about ten eight-hour days of community service work, plus going to the same classes that you did the *781 first time. See, that was suppose to be so much of a hassle for you and inconvenience you that you wouldn't want to do this again. But it didn't work though, did it?
A: No, sir.
Q: So you're probably going to have to go into some kind of alcohol treatment program. I'm not saying it has to be a hospital, but it's going to have to be something a little more serious than what you just got through going through because it obviously didn't work. Alright. Any questions?
A: No, sir.
Q: Alright. The next DWI you get hopefully there won't be onebut it could be charged as a third. And that would be a felony and you'd be looking at a minimum of a year in the parish jail, possibly as much as five years in the penitentiary and a Two Thousand dollar ($2,000.00) fine, possibly the seizure and sale of your motor vehicle, the loss of driving privileges for God knows how long. DWIfourth is a very serious felony. That's ten to thirty in the penitentiary. So it gets worse every time it happens. You're lucky you're not being charged as a second offender. Apparently because of when this occurred there was some question about whether or not they could actually process the second offense if you asked for a jury trial. So in any event, you're being allowed to plead. They just charged this as a first. Alright. Any questions?
A: No, sir.
Q: Alright. Are you pleading guilty because you are in fact guilty?
A: Yes, sir.
Q: On or about November 6, 1997, in Ouachita Parish, Louisiana, did you operate a motor vehicle while under the influence of an alcoholic beverage?
A: Yes, sir.
Q: Alright. And I told you what your results were..189.
A: Yes, sir.
Q: That's quite a bit higher than the minimum level of .10.
By the court: Alright. The Court accepts the plea, finds the same to be freely, voluntarily, knowingly, and intelligently entered after due advisal of rights by the Court and further finds that he's made an intelligent waiver of his right to counsel knowing the dangers and disadvantages of self representation....
The court minutes for the present case reflect that on May 5, 2000, the defendant introduced the transcripts and minutes of the two predicate DWI offenses into evidence and the trial court took the motion to quash under advisement. The record does not reflect that the trial court made a formal ruling on the motion.
On October 24, 2000, the defendant appeared in open court, with counsel, withdrew his previous plea of not guilty, and entered a plea of guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the use of the June 28, 1998 DWI conviction as a predicate offense for the DWI, third charge. The defendant was sentenced to serve three years at hard labor. This appeal followed.

DISCUSSION
Whenever a misdemeanor guilty plea will be used as a basis for actual imprisonment, enhancement of actual imprisonment or the conversion of a subsequent misdemeanor into a felony, it is incumbent *782 upon the court to inform the defendant that by pleading guilty he waives (a) his privilege against self-incrimination; (b) his right to trial by jury where it is applicable; and (c) his right to confront his accuser. State v. Jones, 404 So.2d 1192 (La.1981); State v. Cadiere, 99-0970 (La.App. 1st Cir.2/18/00), 754 So.2d 294.
What the accused understood is determined in terms of the entire record and not just certain "magic words" used by the trial judge. State v. Strain, 585 So.2d 540 (La.1991). Everything that appears in the record concerning the predicate offense, as well as the trial judge's opportunity to observe the defendant's appearance, demeanor and responses in court, should be considered in determining whether or not a knowing and intelligent waiver of rights occurred. Cadiere, supra; State v. Lodrigue, 97-1718 (La.App. 1st Cir.5/15/98), 712 So.2d 671. Factors bearing on the validity of this determination include the age, education, experience, background, competency, and conduct of the accused, as well as the nature, complexity and seriousness of the charge. Cadiere, supra.
The defendant argues that he was not represented by counsel in the June 1998 guilty plea and although the trial court began to inform him of his three Boykin rights, the trial court made no inquiry or determination that he expressly and knowingly waived those constitutional rights in entering the guilty plea. He further contends that the trial judge must ask a defendant "whether he or she understands his or her rights and wants to give them up."
The state argues that the defendant's rights were explained in simple, straightforward language and that the defendant was given the opportunity to ask questions before he pled guilty. The state further argues that it is clear from the transcript that the trial judge explained to the defendant that by pleading guilty he would be giving up his right to a trial, the presumption of innocence, the privilege against self-incrimination, the right to subpoena witnesses and the right to cross examine the state's witnesses.
The exchange between the trial judge and the defendant during the colloquy gave the judge ample opportunity to observe the defendant's demeanor and conduct. The record shows that the judge advised the defendant of his right to counsel and that he did not have to plead guilty. The defendant responded, "No. I want to go ahead and get it behind me".... "That way I can work on it." The judge and the defendant discussed the defendant's probation stemming from a prior DWI. Also, later in the colloquy, the defendant answered affirmatively when asked whether he wanted to plead guilty to DWI first offense. Finally, the judge informed the defendant that by pleading guilty, he was giving up his right to trial, his privilege against compulsory self-incrimination, and his right to confront his accuser.
After the trial judge informed the defendant of his constitutional rights, the defendant interjected and began to explain to the judge why he believed he was stopped by the officer. Thereafter, the judge explained to the defendant the penalties and consequences of his plea and asked him if he had any questions. The defendant responded, "No Sir." The judge also explained the penalty for a later conviction of a third DWI and then asked the defendant if he had any questions. The defendant again responded, "No Sir."
Although the defendant was not represented by counsel when he entered his guilty plea, the conduct and demeanor of *783 the defendant demonstrated that he understood the proceedings and that he knowingly and intelligently waived his Boykin rights. In fact, the defendant's comments in regard to "getting this matter behind him" and "working on the matter" showed that defendant understood the nature of the charge and was knowingly and voluntarily pleading guilty to the charge. Also, the defendant's explanation of the facts surrounding the June 1998 charge and his discussion with the judge regarding a prior DWI conviction during the colloquy at issue is further evidence that the defendant understood the nature of the proceedings. Moreover, the defendant's rights were explained to him in detail and the trial court gave him numerous opportunities to ask questions. Instead, the defendant continued to express his desire to plead guilty.
The Louisiana Supreme Court has stressed that neither Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) nor the court's implementation of Boykin in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), sets out a "magic word formula" which may "serve as a technical trap for conscientious trial judges who conduct a thorough inquiry into the validity of the plea...." State v. Madison, XXXX-XXXX (La.8/31/00), 768 So.2d 593; State v. Bowick, 403 So.2d 673 (La.1981). Here, the judge informed the defendant that by pleading guilty he was "giving up" the right to trial, the right to confront his accusers and the right to remain silent. After being so advised, the defendant stated that he wished to plead guilty. Therefore, in the present case, the absence of the question, "Do you understand?" following the 1998 colloquy does not negate this defendant's guilty plea, where it is clear from the record that the defendant knowingly and intelligently waived his Boykin rights. The assignment of error lacks merit.

ERRORS PATENT
Pursuant to LSA-C.Cr.P. art. 920, we have reviewed the record for error patent and have found none.

CONCLUSION
For the above reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.