956 So.2d 779 (2007)
STATE of Louisiana, Appellee,
v.
Charles A. ESTES, Appellant.
No. 42,093-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
Judgment rendered May 9, 2007.
*781 Louisiana Appellate Project by Annette Roach, for Appellant.
*782 Jerry L. Jones, District Attorney, Cynthia P. Lavespere, Assistant District Attorney, for Appellee.
Before BROWN, GASKINS and MOORE, JJ.
MOORE, J.
The defendant pled guilty to armed robbery in exchange for the dismissal of other charges and no habitual offender filing. The court sentenced him to 75 years at hard labor without benefit of probation, parole or suspension of sentence. The defendant now appeals his conviction and sentence.[1] We affirm.

FACTS
The matters of record establish that at 8:29 p.m. on July 18, 2005, the West Monroe Police Department received a report that an armed robbery had occurred at 206 N. 4th Street in West Monroe. The victim of the robbery, Mr. Gene Anding, stated that the defendant knocked on his door and asked for "Greg." He told the defendant that there was no Greg at the residence. The defendant turned his back as though leaving, and then he suddenly lunged toward the door, pushing it open and knocking Mr. Anding to the floor. The defendant pounced upon Mr. Anding, placed a knife to his throat, and demanded his truck keys. Mr. Anding relinquished his keys, and the defendant drove off in Mr. Anding's 2001 Ford Ranger pickup. Police at the scene of the crime observed a small cut on Mr. Anding's neck; however, Mr. Anding refused medical treatment for the injury.
Later that evening, the stolen pickup was located by police in Ruston at a service station/convenience store where the defendant had abandoned it after carjacking another vehicle. Several items had been removed from the vehicle, and the front seat was damaged.[2] Mr. Anding viewed a surveillance tape of the individual suspected of the carjacking at the Ruston convenience store. He identified that individual as the same person who committed the armed robbery. The suspect was later identified as the defendant.
In the early morning hours of July 19, 2006, a Louisiana state trooper working near Opelousas observed a speeding vehicle traveling northbound on I-49. Attempts to stop the vehicle led to a chase during which the vehicle left the interstate highway and crashed into a ditch. The sole occupant, who was later identified as the defendant, ran from the vehicle. The defendant was apprehended nearby and then placed under arrest. The defendant gave the arresting officer a false name, but later revealed his true identity. After the trooper learned the defendant was driving a stolen vehicle, he contacted the Ruston Police Department as well as the West Monroe Police Department.
*783 Later that day, a detective handling the investigation obtained a warrant for the arrest of the defendant, traveled to St. Landry Parish, and interviewed the defendant. During the interview regarding the armed robbery, the defendant stated that he arrived in West Monroe two days prior to the incident and that his girlfriend dropped him off at an aunt's house. The defendant denied knowing the victim or using a knife to take the truck keys, but admitted wrestling with the victim to get the keys. The defendant further stated he left the vehicle at a convenience store where he jumped into another car and left, traveling to south Louisiana. The defendant was transported back to West Monroe where he was eventually charged with armed robbery.
During the investigation of the armed robbery, West Monroe detectives learned that the defendant was the suspect of a carjacking at an apartment complex in a Dallas, Texas, suburb on July 17, 2006. In that incident, the victim was unloading packages from his car when he was approached by a black male who asked about the location of an apartment in the complex. A few minutes later, the victim moved his car. While exiting his vehicle, the same black male reappeared, wielding a whitehandled, 6 to 8 inch knife, and demanded the victim's car keys, wallet, cell phone, and any other keys the victim had. The victim complied, and the black male drove off in the victim's car.
The stolen car was subsequently located in a parking lot in Carencro, Louisiana, where police learned from the defendant's girlfriend, Niki Babineaux, that the defendant drove the vehicle from the Dallas area to Carencro. He told her that he had borrowed the vehicle from a friend. After leaving the vehicle in a parking lot, the defendant and Ms. Babineaux rode in her car to have breakfast. After breakfast, the defendant drove Ms. Babineaux's vehicle while she slept in the vehicle. She stated that she had worked the night before. When she awoke, the defendant was traveling to the Monroe area. The defendant stopped at a convenience store in West Monroe. Ms. Babineaux told police that while the defendant was inside the store, she drove away leaving the defendant in the store. Ms. Babineaux then returned to Carencro.
A grand jury indicted the defendant on one count of armed robbery, a violation of La. R.S. 14:64, charging that the defendant wilfully and unlawfully committed armed robbery of Gene C. Anding while armed with a knife. In exchange for dismissing other charges, which, according to the guilty plea transcript, included attempted first degree murder, attempted aggravated escape, battery on a correctional officer, and unauthorized use of a motor vehicle, defendant agreed to plead guilty to the armed robbery charge. The state also agreed not to file an habitual offender bill. After accepting the guilty plea, the court sentenced the defendant on February 27, 2005 to 75 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On June 28, 2006, defendant filed a motion to reconsider sentence and a notice and order for out-of-time appeal. The district court denied the motion to reconsider and granted the appeal.

DISCUSSION
By his first assignment of error, defendant contends that he was denied due process when the trial court accepted his guilty plea without ascertaining strong evidence of guilt. Although defendant did not file a motion to withdraw the guilty plea in the trial court, he contends the constitutionally infirm plea may be set aside on appeal. He alleges that the trial *784 court was required to ascertain a "significant factual basis" for the guilty plea after the defendant protested his innocence.
The state contends the defendant did not make a contemporaneous objection to any alleged defect in the guilty plea colloquy nor did the defendant make any attempt to withdraw the plea prior to the instant appeal. The defendant's claim that he was denied due process is based on the following oral exchanges between the court and the defendant at the guilty plea proceeding:
The Court: Are you pleading guilty because you are in fact guilty of armed robbery, sir?
The defendant: I'm saying, I'm pleading guilty to, I know that's less weight off my back.
The Court: Okay. Is it in your best interest to plead guilty, you think?
The defendant: Hmmm
At this point, the defendant's counsel asked for an opportunity to confer and the court went off the record. Counsel then stated to the court:
I did have an opportunity to converse with my client, Mr. Estes. I did explain to him the offer decision. That oftentimes folks may feel that they're not guilty to an offense, but it's in their best interest to enter their plea because there may [be] some other circumstances that ah, that may present itself [sic] to the Court that may make that sentence or that penalty with other offenses more harsh than what they are with the plea deal. I've also explained to him the elements of the offense of armed robbery. . . .
And I told him it's his option whether or not he intends to advise the Court that he's pleading under Alford in his best interest or whether or not he's pleading guilty because he's in fact guilty of armed robbery.
Defendant's counsel also said he had given the defendant examples to illustrate the elements of the other charged crimes that would be dismissed as a result of the plea. He stated that Mr. Estes understands these things and was ready to proceed. At this point in the proceeding, the trial court explained an Alford plea to the defendant. However, the assistant district attorney, Ms. Lavespere, said that no Alford plea had been discussed and she did not have authority to agree to the Alford plea. After Ms. Lavespere contacted the district attorney by telephone, Mr. Jerry Jones, the proceedings resumed.
Subsequently, the state recited the facts of the case and the following exchange between the court and Mr. Estes took place:
The Court: Okay. Mr. Estes, have you been able to hear Ms. Lavespere state what the facts the state would set forth or intends to prove?
The defendant: Yes, sir
The Court: Is that substantially correct to the best of your knowledge? And she indicated Mr. Anding, is it Ms. or Mr. Anding? Gene?
ADA: Mr.
The Court: Mr. Gene Anding alleges that a knife was put to his neck and that his neck or throat area was somehow cut. And that someone forced him to give the keys to his car. He says he saw a videotape and also saw a photograph. And he says that that [sic] person was identified as you. Are you that person, sir? You have to speak up.
The defendant: Yes, sir.
The Court: Sir, you are in fact guilty of the crime of armed robbery, is that your is that my understanding? [sic]
The defendant: Yes, sir

*785 The Court: The facts and circumstances that she went over, do you basically agree with the recitation? Does that sound basically like what happened in your, from your memory?
The defendant: Not all of it
The Court: Not all of it?
The defendant: No sir
The Court: What about the part about the ah, the victim saying that someone came to his house and put a, a knife to his throat?
The defendant: That's the part I don't remember.
The Court: You don't remember?
The defendant: No, sir
The Court: Okay. Are you pleading guilty because you're in fact guilty, sir?
The defendant: I'm in jail, I mean, what else can I do?
The Court: Okay. Mr. Estes, I can-I can't play games with you. And I won't play games with you.
Defense Counsel: May I have a minute?
The defendant then conferred with his attorney.
The Court: Okay. Mr. Pierre?
The Court: Okay. Like what [sic] I told you earlier Mr. Estes, I can only accept a guilty plea if you're in fact guilty. If you're not guilty then we'll set a trial date and do a trial by judge or jury or go in another direction. But when I asked you the question which is the ultimate question. Are you in fact the same person who they accuse of committing armed robbery on or about the day of July 18, 2005, wherein Gene Anding in Ouachita Parish had a knife placed to his throat and the keys to his car were handed over without his consent or permission while the offender was armed with a dangerous, to-wit a knife. Ah, are you in fact that person, sir?
The defendant: Yes, sir.
The Court: Is the record, "yes, sir"?
The defendant: Yes, sir.
At this point, the judge accepted the guilty plea. Later the defendant stated, "I mean, I know it ain't, it ain't nobody's fault but mine, you know what I'm saying. And I'd like to plea."
Regarding guilty pleas generally, courts usually only review guilty pleas to ensure that they were both counseled and voluntary. State v. Brooks, 38,963 (La. App. 2 Cir. 9/22/04), 882 So.2d 724, 730, writ denied, 2004-2634 (La.2/18/05), 896 So.2d 30; State v. Gobert, 02-771 (La.App. 3 Cir. 11/12/03), 865 So.2d 779. The entry of a guilty plea must be a free and voluntary choice on the part of a defendant. State v. Brooks, supra; State v. Garth, 622 So.2d 1189 (La.App. 2 Cir.1993). A valid guilty plea requires a showing that the defendant was informed of and waived his constitutional rights of trial by jury and confrontation and the privilege against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971); State v. Monroe, 25,825 (La.App. 2 Cir. 3/30/94), 635 So.2d 481.
What the accused understood is determined in terms of the entire record and not just certain "magic words" used by the trial judge. State v. Strain, 585 So.2d 540 (La.1991); State v. Brooks, supra; State v. Munholland, 34,941 (La.App. 2 Cir. 10/12/01), 797 So.2d 778, writ denied, 01-3077 (La.9/13/02), 824 So.2d 1185. Everything that appears in the record concerning the predicate offense, as well as the trial judge's opportunity to observe the defendant's appearance, demeanor and responses in court, should be considered in determining whether or not a knowing and intelligent waiver of rights occurred. *786 State v. Munholland; State v. Cadiere, 99-0970 (La.App. 1 Cir. 2/18/00), 754 So.2d 294; State v. Lodrigue, 97-1718 (La.App. 1 Cir. 5/15/98), 712 So.2d 671. Factors bearing on the validity of this determination include the age, education, experience, background, competency, and conduct of the accused, as well as the nature, complexity and seriousness of the charge. State v. Munholland, supra at 782.
Viewing the transcript in its entirety and the applicable jurisprudence, we conclude that the defendant knowingly and intelligently entered a guilty plea to the crime of armed robbery in this case.
The record shows that at the beginning of the proceedings, the defendant told the court he wanted to plead guilty to armed robbery with a pre-sentence investigation. During the actual colloquy, the court explained the charge of armed robbery and the requirement that the robbery be committed while the culprit is armed with a dangerous weapon. The defendant stated that he understood, and he stated that he had not been threatened, coerced, or intimidated to offer the plea. However, when the court asked him if he was pleading guilty because he was in fact guilty of armed robbery, he stated that he was pleading guilty to [armed robbery] because he knew "that's less weight off my back." The court took that to mean that the defendant was pleading guilty because it was in his "best interest" to so plead.
After the inconclusive discussions regarding whether the state would agree to allow an Alford plea, the court had the assistant district attorney recite the facts of the case. After the factual recitation, the court addressed the defendant stating that "Mr. Gene Anding alleges that a knife was put to his neck and that his neck or throat was somehow cut. And that someone forced him to give the keys to his car. He says he saw a photograph. And he says that that person was identified as you. Are you that person, sir? You have to speak." The defendant responded, "yes, sir." To make sure that the defendant was in fact stating that he was the person who committed the offense, the court then said, "Sir, you are in fact guilty of the crime of armed robbery, is that your, is that my understanding?" The defendant responded, "yes, sir." When asked if he agreed to the factual recitation of the district attorney, the defendant stated that he did not agree with all of it, namely, he could not remember the part about putting a knife to the victim's throat.
The court then told the defendant that he could not accept his guilty plea unless he was in fact guilty. Otherwise, the matter would be set for trial. He then asked if defendant was the person "who they accuse" of the armed robbery of Gene Anding . . . "placed a knife to his throat and the keys to his car were handed over. . . . Ah, are you in fact that person, sir?" To which, the defendant answered, "yes, sir." The court then confirmed the defendant's response, "is the record, `yes, sir'?" To which the defendant responded, "yes, sir."
Although the phrase, "who they accuse" casts a slight degree of ambiguity to the transcript, especially in light of the defendant's ambivalence regarding the factual recitation by the assistant district attorney, it is clear that the court went to great pains to be certain that the defendant knowingly and voluntarily entered a guilty plea to the charge of armed robbery, and we will not disregard its conclusion. There was no objection when the court accepted the guilty plea, and it is clear that the defendant, the defendant's attorney, the court and the assistant district attorney all believed that the defendant was voluntarily pleading guilty to the crime of armed robbery and not, as now *787 argued, simply agreeing that he was the person charged with the offense, but never intended to plead guilty. Defense counsel and the court went to significant pains to make absolutely certain that the defendant understood the charge and the elements of the crime. The court expressly told the defendant that it would not accept a guilty plea unless the defendant admitted that he was in fact guilty. Defendant was informed of the elements of the crime. Each element was explained. He was informed of the evidence against him on this charge, as well as the elements and evidence of the other charges. Defendant clearly did not want to go to trial in light of the evidence regarding the crime of conviction as well as the evidence of the other charges.
We observe that "the due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea. Louisiana law, unlike [federal law] has no statutory provision requiring accompaniment of a guilty plea by the recitation of a factual basis." State v. Wynne, 40,921 (La. App. 2 Cir. 4/12/06), 926 So.2d 789 (citing State v. Griffin, 633 So.2d 358 (La.App. 1 Cir.1993)), writ denied, 94-0240 (La.10/14/94), 643 So.2d 157. Due process requires a finding of a significant factual basis for a defendant's guilty plea only when a defendant proclaims his innocence or when the trial court is otherwise put on notice that there is a need for an inquiry into the factual basis. State v. Brooks, supra. An express admission of guilt is not a constitutional requirement for the imposition of a criminal penalty. The fact that a defendant believes that he is innocent, and makes such belief known to the court, does not preclude him from entering a guilty plea. The presence of significant evidence of actual guilt provides a means by which the court may test whether a plea was intelligently entered. However, it should be noted that a defendant has no absolute right to have his guilty plea accepted by the trial court. State v. Linear, 600 So.2d 113 (La.App. 2 Cir.1992) (citations omitted).
In this instance, the defendant did not actually protest his innocence as in a full-fledged Alford plea. However, he did not agree with or could not remember that part of the factual recitation stating that he "put a knife to the throat" of the victim. Because the crime of armed robbery requires a dangerous weapon, this ambiguity would ordinarily be troublesome. However, the denial itself is ambivalent. The defendant did not deny that he was armed with a knife when he took the victim's keys; he simply stated that he did not remember the part stating that he "put a knife to the victim's throat."
Even if we assume that the defendant intended to deny that he was armed with a knife such that he was essentially denying this requisite element of the crime of armed robbery, under an Alford-type "best interest" plea scenario, we conclude that the district court correctly determined that there was an adequate factual basis to support the charge and that the guilty plea was intelligently and voluntarily entered. The record shows that the judge determined that the evidence supported the charge of armed robbery, and determined that this evidence, coupled with the other circumstances of the plea, demonstrated that the plea represents a voluntary and intelligent choice among the alternatives. State v. Orman, 1997-2089 (La.1/9/98), 704 So.2d 245. Defendant was facing numerous other charges. The record shows that his attorney explained the other charges and possible sentence scenarios. The defendant indicated that he understood these matters, and stated that he was satisfied with his representation. *788 During the plea hearing, the state acknowledged the terms of the plea agreement for the record. As a result of the plea, the state agreed to dismiss pending felony charges in Ouachita Parish and agreed not to file an habitual offender bill. The court also explained to him that any possible pending charges in other jurisdictions would not be affected by the plea agreement.
Additionally, during the plea colloquy, the court thoroughly explained to the defendant the rights he would be waiving by entering a guilty plea. The trial court covered the right to trial by judge or jury, right to remain silent, presumption of innocence, right against self-incrimination, right of confrontation, right of cross examination, and the right of compulsory process. The trial judge also informed the defendant that there was no agreement as to sentencing in the case and that the sentencing range was not less than 10 years, but could be as long as 99 years and that no matter what sentence was imposed, it must be served without benefit of probation, parole or suspension of sentence. As to all these matters, the defendant unequivocally said he understood and wished to plead guilty.
We therefore conclude, that when the record is reviewed in its entirety, it firmly establishes that the defendant voluntarily and intelligently entered a guilty plea to armed robbery in accordance with the due process requirements. This assignment of error is without merit.
By his second assignment of error, defendant contends that the near maximum sentence imposed on this second felony offender is cruel, unusual and excessive, and in violation of Article I, § 20 of the Louisiana Constitution of 1974 as it serves no useful purpose of rehabilitation. The defendant was sentenced to 75 years at hard labor without benefits. Thus, for practical purposes, it is essentially a life sentence for the 24-year-old defendant.
The defendant argues that his sentence is not supported by the record and is nothing more than cruel and unusual punishment. He contends the sentencing court's findings regarding the defendant's criminal history are unfounded. Specifically, the defendant argues the trial judge incorrectly noted the offense for his prior conviction, and the judge was unduly influenced by crimes that occurred after the instant offense.
When a defendant fails to timely file a La. C. Cr. P. art. 881.1, motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App. 2 Cir. 9/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La.App. 2 Cir. 2/25/98), 707 So.2d 164.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App. 2 Cir. 4/6/05), 899 So.2d 733. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Bonanno, 384 So.2d 355, 358 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985).
*789 There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2 Cir. 03/01/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385. The trial court shall exercise its sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829, 831 (La.1981). Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2 Cir. 5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La. App. 2 Cir. 1/28/04), 865 So.2d 280, writ denied, 04,057 (La.9/24/04), 882 So.2d 1165.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2 Cir.1993); State v. Russell, 40,526 (La.App. 2 Cir. 1/27/05), 920 So.2d 866. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof that the defendant committed the other offenses. State v. Jones, 31,569 (La.App. 2 Cir. 12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2 Cir. 10/29/97), 702 So.2d 40, 42. In this instance, no motion to reconsider sentence was filed, and thus we limit our review to the claim of excessiveness, which is the sole argument presented by the defendant. The trial court imposed a sentence of 75 years at hard labor without benefit of probation, parole, or suspension of sentence.
As a result of the plea agreement entered into between the defendant and the state, the defendant pled guilty to armed robbery in exchange for dismissal of other pending charges in Ouachita Parish, and the defendant would not be billed as an habitual offender. After the defendant entered his guilty plea, a pre-sentence investigation (PSI) was ordered. At sentencing, the trial judge reviewed the defendant's PSI on the record. The trial judge stated the defendant had not led "a law abiding life in the past" and that the defendant had a violent criminal history.
In reviewing the defendant's criminal history, the judge noted the defendant had one prior felony conviction for unauthorized entry of an inhabited dwelling[3] and the defendant's probation for this offense was revoked. The defendant's probation officer described the defendant as young, immature, somewhat arrogant and disrespectful to authority. The defendant's record includes two misdemeanor convictions for possession of marijuana (Dallas, TX), several traffic offenses[4], and several *790 charges (unauthorized entry of a vehicle, possession of marijuana, 8.4 grams) originating from Dallas, TX, with no disposition available at the time of the sentencing. The defendant was also arrested for offenses that occurred after the armed robbery including attempted second degree murder, attempted simple escape, and aggravated escape. The trial judge noted the defendant made at least two unsuccessful escape attempts while the instant charges were pending. The trial judge found the defendant's propensity to commit crimes against persons was "not only significant and severe but completely unwarranted and basically unexplainable."
The PSI described the facts of several crimes against persons, including an offense against the defendant's girlfriend, Niki Babineaux[5], who suffered facial and retina bruising after an altercation with the defendant. The court also described an incident that occurred after the defendant's arrest for the instant offense, during the time the defendant was being interviewed by an indigent defendant board (IDB) employee. After the defendant's interview concluded, the defendant took a pen left on a table by another interviewer, jumped across a table and stabbed the female IDB employee in the neck several times with the pen. The victim, who was interviewing another inmate at the time of the attack, had not even spoken to the defendant. The defendant had to be restrained as he continued to pursue the victim. The defendant was charged with attempted first degree murder, battery of a police officer, attempted simple escape, and aggravated escape for this incident; however, as a result of the plea agreement in the instant case, all these charges were dismissed. The defendant argues that the trial judge gave too much consideration to this incident when determining the defendant's sentence.
In considering the factors of La. C. Cr. P. art 894.1, the trial court concluded that the defendant's conduct caused or threatened serious harm, and that the defendant contemplated whether his criminal conduct would cause or threaten harm. The judge did not believe the defendant acted under strong provocation nor did the judge find there were grounds to justify the defendant's conduct or that the victim facilitated the commission of the crime. According to the trial judge, the defendant's conduct was likely to recur, and the defendant had shown a pattern of disrespecting authority. Additionally, the trial judge believed the defendant was likely to commit another crime if not incarcerated.
The trial court noted that the defendant was given a chance to address the court during the preparation of the PSI and during sentencing but declined both times. When Officer Greg Bridges attempted to interview him for the PSI, the defendant refused to speak (other than to give his name). The court likewise gave defendant an opportunity to address the court but he declined. As the trial judge reviewed the aggravating circumstances of this case, he determined defendant showed a "troubling" lack of remorse during the proceedings, and he had not accepted responsibility for his actions. He also misled the court regarding the prior felony conviction. The trial judge found there was an undue risk that the defendant would commit another crime during a period of suspended sentence or probation and that the defendant was in need of correctional *791 treatment or custodial environment that can be provided most effectively by commitment to an institution. The judge concluded that any lesser sentence would deprecate the seriousness of the defendant's crime and concluded that a 75-year sentence was appropriate for this defendant, a second felony offender with a propensity for violent behavior.
It is noted that the record supports the exercise of the trial court's vast discretion in sentencing this defendant. As a result of his plea agreement, the defendant reduced his sentencing exposure to a maximum of 99 years at hard labor without benefits as opposed to the potential maximum sentence of 198 years the defendant faced as a second felony offender who committed armed robbery. The defendant was involved in a crime spree over the course of several days in two states. Even after being arrested for armed robbery, the defendant continued to commit violent acts against others, and the court correctly considered the stabbing incident while defendant was in jail. State v. Jones, 33,111 (La.App. 2 Cir. 03/01/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385. Considering the facts and circumstances of this case and the defendant's criminal history, the sentence imposed is not grossly disproportionate to the seriousness of the defendant's actions nor is it a purposeless or needless infliction of pain and suffering. The record does not support the defendant's contentions. This assignment of error is without merit.
By his third assignment, defendant contends his counsel rendered ineffective assistance by failing to file the motion to reconsider sentence timely. According to the defendant, his right to appeal his sentence on the basis of excessiveness should not be denied because of his trial attorney's failure to timely file the motion. The defendant further alleges he was prejudiced by trial counsel's action, or lack thereof.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2 Cir. 6/21/00), 764 So.2d 1164. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App. 2 Cir. 9/27/95), 661 So.2d 673.
The mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. A basis for ineffective assistance of counsel may only be found if a defendant can show a reasonable probability that but for counsel's error, his sentence would have been different. State v. Louis, 32,347 (La.App. 2 Cir. 10/27/99), 744 So.2d 694.
The defendant was sentenced on February 27, 2006. On March 1, 2006 the defendant's trial attorney filed a motion to be relieved as counsel of record. The motion was denied on March 8, 2006, wherein the trial court stated the motion would likely be granted after the filing of post-sentencing motions or the record contained an acknowledgment that the defendant did not desire to appeal his sentence. The ruling further indicated that Louisiana Appellate Project (LAP) could potentially be appointed after the filing of the post-sentencing motions. The defendant filed a pro-se motion for production of transcripts on March 29, 2006. On June 19, 2006, *792 apparently in response to a "motion to be relieved as counsel of record"[6] the trial court ordered a status hearing be held in the case.
On the day of the status hearing (June 28, 2007), the defendant's trial counsel filed several motions including a motion to reconsider sentence. The motion to reconsider sentence was denied for failure to comply with La. C. Cr. P. art. 881.1. The defendant's counsel also filed a "notice of out of time appeal," designation of record, assignments of error, and "motion to appoint [counsel]." These motions were granted.
For the reasons stated in our review of the defendant's excessive sentence claim, that is, that the 75-year sentence is not excessive, the defendant has failed to prove that, but for trial counsel's failure to file a motion to reconsider sentence, his sentence would have been different. State v. Louis, supra. The trial court properly considered the sentencing factors set forth in La. C. Cr. P. art. 894.1, and then, within its discretionary authority, tailored the sentence to both this offense and this offender. The record does not reveal that the defendant was prejudiced by the failure to timely file the motion to reconsider sentence. This assignment is without merit.
Defendant's assignment of errors patent:
The defendant contends this court should recognize as error patent the fact that the defendant's indictment did not contain the statutorily mandated language "contrary to the law of the State of Louisiana and against the peace and dignity of the same."
The state did not respond to this contention.
Article VII, § 1 of the Louisiana Constitution of 1921[7] did require the formal conclusion as cited by the defendant. However, the requirement was not repeated in the Constitution of 1974.
La. C. Cr. P. art. 462 provides, in part, "The indictment by a grand jury may be in substantially the form" which includes the previously held mandatory language. The permissive nature of the language of La. C. Cr. P. art. 462 does not require inclusion of the language cited by the defendant nor does the failure of the state to include the specific language constitute error patent. It is noted that the defendant failed to file a motion to quash or raise any objection to the error in the trial court. See La. C. Cr. P. art. 841(A); La. C. Cr. P. art. 521; La. C. Cr. P. art. 531 et seq.
This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant was sentenced on February 27, 2006; however, the defendant's motion for appeal was not filed until June 28, 2006, when the defendant requested an "out-of-time" appeal. The appropriate procedural vehicle for requesting an out-of-time appeal is by filing a post-conviction relief application. State v. Counterman, 475 So.2d 336, 338-339 (La.1985); State v. Adams, 39,792 (La.App. 2 Cir. 06/29/05), 907 So.2d 844, 847, writ denied, XXXX-XXXX (La.8/18/06), 935 So.2d 136. This court may consider a defendant's motion for out-of-time appeal as a proper application for post-conviction relief and entertain the appeal in the interest of judicial economy, as the defendant would be entitled to reinstatement of his appellate rights. State v. Counterman, supra.
[2] In the victim's PSI impact statement, Mr. Anding reported the loss of a $400 scanner, $78 detector, a $180 cell phone, and $250 in damage to the front seat of the vehicle.
[3] In brief, the defendant provides a copy of the bill of information and minutes for this prior conviction. The bill, originally charging unauthorized entry of an inhabited dwelling was amended to unauthorized entry of a place of business (La. R.S. 14:62.4), and the defendant pled guilty to the latter offense.
[4] Traffic offenses were improper lane usage, no driver's license, no vehicle registration, open container in vehicle, unsafe vehicle, and expired motor vehicle license.
[5] This incident occurred in June 2004 while the couple lived together in Dallas, TX. Ms. Babineaux was living in Carencro, LA, when the defendant visited her in July 2005.
[6] It is unclear whether this was a newly filed motion or reconsideration of the previously denied motion to relieve counsel.
[7] Article VII, § 1 of the Louisiana Constitution of 1921 stated in part, "[A]ll prosecutions shall be carried on in the name and by the authority of the State of Louisiana, and shall conclude: "against the peace and dignity of the same."