957 So.2d 136 (2007)
STATE of Louisiana
v.
Larry CANEZARO.
No. 2007-KK-668.
Supreme Court of Louisiana.
June 1, 2007.
*137 PER CURIAM.
Writ granted. In this criminal matter, the defendant, Larry Canezaro, was charged with possession of cocaine, in violation of La. R.S. 40:967(C), and possession of Adderall, in violation of La. R.S. 40:968(C). The following facts of his arrest following a traffic stop were adduced in a pre-trial hearing: Deputy James Lewis of the Iberville Parish Sheriff's Office testified that, on August 20, 2005, he was sitting in a parking lot in Maringouin, Louisiana, observing traffic. The deputy observed a pickup truck driven by the defendant stop at a stop sign. However, the defendant did not activate his turn signal to signal his subsequent right turn. Deputy Lewis pulled out and followed behind the defendant, running the license plate number of the truck through law enforcement data bases. After following for about two miles, the computer information came back and Deputy Lewis initiated a traffic stop, just over the parish line.
Deputy Lewis requested that the defendant exit his vehicle. Canezaro met the deputy halfway between their two vehicles. Because there were two passengers remaining in the truck, the deputy requested that the defendant stay where he was and approached the truck on the passenger side.
From his vantage point, the deputy could see a shotgun between the two remaining passengers, a man and a woman. The deputy requested that the passengers keep their hands where he could *138 see them and asked the man, Jonathan Harris, closest to the door, to exit the vehicle. After Harris did so, the deputy recovered the shotgun and found that a shell was half-way chambered but the weapon had jammed. The deputy saw one ejected shell on the floorboard. The deputy checked Harris for weapons while the remaining passenger, Ms. Vaughn, sat with her hands visible.
The deputy saw glass tubing in the passenger side door where Harris had been sitting. The tubing, which was believed to be a crack pipe, was retrieved. In addition, an open container of beer was seen in the vehicle.
At this point, the defendant was arrested for the traffic violation and violation of the open container law. Harris was arrested for possession of drug paraphernalia. Both men were handcuffed and read their Miranda rights, but neither made a statement at that time. Ms. Vaughn was not arrested.
A wrecker was called to tow away the defendant's truck. While waiting on the wrecker, Deputy Lewis began to inventory the contents of the truck. The deputy saw two boxes of cigarettes, one in the driver's side door and another under the driver's seat. Both boxes were being held open by more metal tubing, also believed to be a crack pipe. Inside one, wrapped in cellophane, were several rocks of crack cocaine. Inside the other, also wrapped in cellophane, were several pills which the defendant later admitted to be Adderall.
Deputy Lewis admitted he did not have a warrant to search the truck, did not ask for consent to search the truck, and did not wait until the truck was taken to the impound lot before he began his inventory search. Deputy Lewis also admitted he never told the defendant he could waive an inventory of his truck or that he had the option to leave his car and have someone else come get it. Deputy Lewis stated that he acted consistently with the procedures of the Iberville Parish Sheriff's Office and that an inventory was necessary to protect him and the sheriff's department from claims that items were stolen. Although Deputy Lewis feared for his safety when he initially saw the shotgun, he admitted that he was no longer in fear for his safety when he conducted the search.
Canezaro filed a pretrial motion to suppress the cocaine and the Adderal seized during the traffic stop. After hearing the above-described facts, the district judge denied the motion to suppress, finding that the stop was valid and the subsequent seizure proper. Further, the district court found the fact that there was a loaded shotgun on the seat between the two passengers justified the officer's actions subsequent to its discovery.
By a 2-1 vote, the appellate court granted the defendant's writ. The court of appeal majority found unreasonable the purported inventory search of the defendant's vehicle. The court of appeal majority held the search conducted here violated constitutional guarantees against unreasonable searches and seizures, where the circumstances established that the search of the vehicle was not sufficiently restricted in scope to constitute a true inventory search. The dissenting judge would have denied the writ, finding that even if the inventory search was invalid, the search was valid as being incident to a valid arrest of an occupant of the defendant's car under New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
Rehearing and rehearing en banc were requested by the state, but the appellate court denied rehearing and the request for rehearing en banc by the same 2-1 margin. In denying rehearing, the court of *139 appeal additionally relied upon our holding in State v. Rome, 354 So.2d 504 (La.1978).
The state filed a writ application in this court, seeking review of the appellate court's ruling. Because we find that the court of appeal's ruling was legally incorrect, we reverse the judgment of the court of appeal granting the defendant's motion to suppress evidence and reinstate the judgment of the district court denying the defendant's motion to suppress.
The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Similarly, the Louisiana Constitution protects a citizen's right to privacy:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330, see Coolidge v. New Hampshire, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). Contrary to Deputy Lewis's characterization of his search as one undertaken to inventory the contents of the truck, the state contends in their writ application that the officer was authorized to conduct a warrantless search of the defendant's vehicle as a search incident to the defendant's arrest.
In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court delineated both the justification for, and the scope of, a search incident to arrest. Basically, the Supreme Court found it reasonable for the arresting officer to search for and seize any evidence on the arrestee's person and the area into which an arrestee might reach in order to grab a weapon or evidentiary items. Chimel, 395 U.S. at 762-763, 89 S.Ct. at 2040.
After Chimel, the Supreme Court was presented with the issue of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants. In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court held that
when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. . . . Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest *140 the arrestee may have. Belton, 453 U.S. at 460-461, 101 S.Ct. at 2864 (internal citations omitted).
Under the factual circumstances presented here, the officer made a valid traffic stop of the defendant's vehicle. Once the defendant was removed from the car, the officer was authorized to check the passengers for his safety. Upon seeing the shotgun, the officer was further authorized to remove one or both of the passengers and secure the weapon. When Harris exited the car, the deputy saw drug paraphernalia and an opened container of beer. On these bases, i.e. the traffic violation, the violation of the open container law, and the violation of the drug laws, arrests were made. The deputy's subsequent search of the truck was valid as a search incident to arrest.
We are not constrained by the deputy's characterization of the search as one pursuant to inventory nor is our analysis of the facts circumscribed by that characterization. The facts adduced at the suppression hearing support our determination that the search was a valid one incident to an arrest. Whether the cigarette containers were open or not is irrelevant under Belton, as the officer would have been authorized to search even a closed container within the truck's interior.
In Rome, supra, the case relied upon by the court of appeal in denying rehearing, the defendant was arrested for DWI. The Rome defendant had been pulled over in a service station at 2 a.m. on a rainy evening. The court noted that Rome had not been asked whether he wanted to make other arrangements for his vehicle or whether he consented to a search of his car. This court stated: "[u]pon arrest for a traffic violation, the motorist's vehicle cannot constitutionally, solely because of the traffic arrest, become the subject of an unlimited criminal investigation in order, if possible, to charge the motorist with more serious crimes." Rome, 354 So.2d at 506. Noteworthy is the fact that Rome was decided in 1978, prior to the Supreme Court's 1981 Belton decision.
Had the defendant merely been charged with improper signalization, a full search of the interior of the vehicle may not have been justified. However, Deputy Lewis had the additional information that there was a loaded weapon in the truck (thus heightening the officer's safety concerns vis-a-vis a search of the truck), as well as an opened container of beer and drug paraphernalia. Considering these additional facts which were known to Deputy Lewis, we find his subsequent actions in searching the truck after the arrests of the defendant and Harris to be proper.
The matter is remanded to the district court for further proceedings consistent with this ruling.
CALOGERO, C.J., concurs for reasons assigned by WEIMER, J.
WEIMER, J., concurs and assigns reasons.
WEIMER, J. concurring.
I concur in the result, finding that the facts of this case are distinguishable from those in State v. Rome, 354 So.2d 504 (La.1978). Unlike Rome, the arrest in this case was not for a suspected traffic violation only. As outlined in the opinion, there was a loaded weapon in the truck as well as an opened container of beer and drug paraphernalia. These additional facts distinguish this case from the inventory search in Rome.