1 So.3d 645 (2008)
STATE of Louisiana, Appellee,
v.
James L. McGRAW, Appellant.
No. 43,778-KA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2008.
Rehearing Denied January 8, 2009.
*648 W. Jarred Franklin, Louisiana Appellate Project, for Appellant.
*649 Jerry L. Jones, District Attorney, R. Nicholas Anderson, Assistant District Attorney, for Appellee.
Before CARAWAY, PEATROSS and DREW, JJ.
CARAWAY, J.
James McGraw was convicted after a jury trial of attempted possession of a controlled dangerous substance, Schedule III (hydrocodone), in violation of La. R.S. 14:27 and La. R.S. 40:968. McGraw received the maximum sentence of two and one-half years' imprisonment at hard labor. He now appeals contesting, among other issues, the validity of the search of his vehicle. He also alleges an excessive sentence. We now affirm the conviction and sentence.

Facts
On December 6, 2005, the state filed a bill of information charging McGraw with possession of hydrocodone (in violation of La. R.S. 40:968), possession of marijuana (in violation of La. R.S. 40:966), possession of an open container (in violation of La. R.S. 32:300), and making an improper turn (in violation of La. R.S. 32:104 B). The charges were severed. The instant case relates to possession of hydrocodone charge stemming from a late-night traffic stop in which McGraw, the driver, and Leon Day, the passenger, were ultimately arrested. Trial of this matter revealed the following facts.
On October 26, 2005, Monroe Police Officer Satre observed McGraw make an improper turn at an intersection. Officer Satre stopped, approached McGraw's vehicle and asked for his license and registration. The officer's testimony revealed the following concerning McGraw's arrest that led to the vehicle's search:
A. I made contact with Mr. McGraw, asked for his driver's license, registration, insurance which he gave me. And I observed a cup in his cup holder.
Q. With regard to placing Mr. McGraw under arrest, had you made a decision at that point in time on what to do with Mr. McGraw?
A. No, sir.
Q. So you're investigating the improper turn, received his driver's license, registration, insurance. All that seemed to be in order?
A. Yes, sir.
Q. And then notice a cup in the cup holder?
A. Yes, sir.
Q. What did you do then? Did you take possession of that?
A. Took possession and smelled it. It smelled like an alcoholic beverage.
Q. What did you do with the cup at that point in time?
A. I threw it out. Well, I poured the drink out.
Q. What did you do with Mr. McGraw at that time?
A. At that point, well, at that point I decided thatI don't know if I thought he made ayou know lied to me or not. I made the decision to arrest him for the improper turn.
Q. Did you place him anywhere?
A. I took him out of the car and placed him in my patrol car.
The arrest reports show that McGraw was also arrested for a violation of the open container law, but Officer Satre's testimony does not indicate when that arrest was made.
At some point in time after the above events, Officer Satre searched "just the driver's side" of McGraw's vehicle, which he characterized as the area where McGraw could reach. In the middle console, Satre discovered what laboratory *650 tests later identified as hydrocodone. He also found what was later determined to be marijuana in the driver's door pocket. Officer Satre also placed McGraw under arrest for possession of hydrocodone and marijuana. A subsequent search of his person uncovered over $500 in cash.
Monroe Police Corporal James Crouch provided Officer Satre with backup assistance. Corporal Crouch testified that he assisted Officer Satre with finding the passenger's identity. Crouch's warrant check on Day showed that he had an outstanding warrant in Monroe City Court. Corporal Crouch got Day out of the vehicle, arrested him on the outstanding warrant and took him to his unit to do a search. Corporal Crouch noticed that Day's hand was clenched. When he asked Day to open his hand, Day attempted to throw something into the air, but the officers successfully restrained him and confiscated a rock of crack cocaine. Day was ultimately held on the outstanding warrant and arrested for two counts of resisting an officer and one count of possession of cocaine.
McGraw's friend and sole defense witness, David Cyrus, Jr., testified that at some point before the defendant's arrest, he had detailed McGraw's vehicle, and another customer's. As part of his cleaning procedure, he removed the personal property from both cars, cleaned them, and placed their property back into their respective cars. Around the day McGraw was arrested, the other customer complained to Cyrus that various CDs and a napkin containing a Lortab (a pink pill) was missing from his car. When Cyrus heard about McGraw's arrest, he testified that he realized he might have inadvertently placed the Lortab in the wrong vehicle. Cyrus reiterated several times that he knew the pill was pink because he had actually seen it. Upon cross-examination, Cyrus admitted that the hydrocodone admitted into evidence was not pink.
A six-person jury convicted McGraw of the responsive verdict of attempted possession of hydrocodone. A post-judgment verdict of acquittal was denied by the trial court, and McGraw was sentenced to the maximum term of two-and-one-half years at hard labor on May 15, 2008.[1]

Discussion
McGraw argues that the state failed to prove that he was in constructive possession of the hydrocodone due to the lack of evidence that the drug was in his dominion and control or that he had knowledge of the drug in his car.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. *651 Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Robbins, 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Robbins, supra. A conviction based upon circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
The elements of attempted possession of hydrocodone require a person to knowingly or intentionally do or omit an act for the purpose of and tending directly toward the accomplishing of the possession of hydrocodone, a Schedule III drug, without a valid prescription or in the absence of an enumerated professional practice. La. R.S. 14:27; La. R.S. 40:968. To prove attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent, possession of the drug. State v. Chambers, 563 So.2d 579 (La.App. 4th Cir.1990).
It is not necessary for the state to prove that the defendant was in actual possession of the contraband; rather, proof of constructive possession is sufficient. Constructive possession is shown when the state proves that the contraband was within the defendant's dominion and control and that the defendant had knowledge of its presence. State v. Toups, 01-1875 (La. 10/15/02), 833 So.2d 910; State v. Robbins, supra.
The mere presence of a person in the place where contraband is found or the mere association with another person possessing contraband is not sufficient to prove constructive possession. State v. Harris, 94-0970 (La. 12/8/94), 647 So.2d 337; State v. Robbins, supra. Guilty knowledge is an essential element of a possession charge, and such knowledge may be inferred from the circumstances. State v. Toups, supra; State v. Robbins, supra. A determination of whether the defendant was in possession depends on the "peculiar facts" of each case, which may include the following: (1) the defendant's knowledge that the contraband is in an area; (2) his relationship with the person found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use; and (5) the defendant's physical proximity to the contraband. State v. Robbins, supra. Further, a defendant may have constructive possession if he willfully and knowingly shares the right to control the contraband with another. Id.
*652 The subject pill was not in the actual possession of either the driver or passenger in this case. Thus, the state was required to prove that McGraw constructively possessed the illegal drug. The facts show that the pill was found in the middle console of a car that belonged to McGraw. Officer Satre testified that the middle console was located within arms reach of McGraw, thus raising an inference that it was McGraw who had complete control over the drug hidden in his vehicle. Furthermore, the discovery of other drugs in the car and the large sum of cash found on McGraw's person also leads to an inference of his involvement in illegal drug activity. This evidence shows that McGraw had access to two areas where drugs were found, was located in close proximity to the hydrocodone pill and was in the car with a passenger who was carrying drugs.
The jury obviously rejected the testimony which suggested that the pill was mistakenly placed in McGraw's car. Considering the inconsistencies in that defense witness's description of the pills, this rejection is reasonably supported by the record. From the remaining evidence, the jury could have reasonably concluded that McGraw committed an act tending directly toward the accomplishment of his intent, possession of hydrocodone.
In his second assignment of error, McGraw argues that the trial court erred in denying his motion to suppress. The trial court denied McGraw's motion to suppress without an evidentiary hearing for failure to meet the procedural threshold requirements of Article 703(E), that is, he failed to allege facts that would require the granting of relief through a motion to suppress. Upon the court's denial of the motion, defense counsel lodged an objection. On appeal, McGraw argues only the merits of the motion to suppress, as revealed by the evidence of the search adduced at trial. He asserts that Officer Satre had no probable cause to stop and question him for a violation of the open container law and that the subsequent search of the vehicle was illegal.
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. Amend. IV.
The Louisiana Constitution contains similar wording, but goes further to protect a citizen's right to privacy in La. Const. Art. 1, § 5:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
The Louisiana Supreme Court has held that the Louisiana constitutional declaration of the right to privacy is not a duplicate of the Fourth Amendment or merely coextensive with it. It is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution. State v. Hernandez, 410 So.2d 1381 (La.1982). In recent years, however, this higher standard noted in Hernandez has not resulted in the suppression of more *653 evidence in Louisiana than is required under a Fourth Amendment analysis, particularly concerning automobile stops, searches and seizures.[2]
A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Canezaro, 07-668 (La.6/1/07), 957 So.2d 136.
Generally the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred. State v. Waters, 00-0356 (La.3/12/01), 780 So.2d 1053. If a police officer observes a traffic infraction, the subsequent stop for that offense is clearly legal. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Stoutes, 43,181 (La.App.2d Cir.4/2/08), 980 So.2d 230. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. This objective standard is indifferent to the relatively minor nature of a traffic violation. State v. Stoutes, supra.
The Fourth Amendment protects "against unreasonable searches and seizures" of (among other things) the person. Virginia v. Moore, ___ U.S. ___, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008). If an officer makes a lawful arrest of an individual, that officer is authorized, without more, to search the arrestee and his wingspan, or lunge space for weapons and evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Stoutes, supra. When a lawful arrest is made of the occupant of a vehicle, or of a recent occupant, then law enforcement automatically has the right to search the entirety of the passenger compartment, including closed containers found in the passenger compartment, as a contemporaneous incident of the lawful arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Belton is not limited to situations where suspects remain in their vehicles when approached by the police. In Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), police accosted the driver of a vehicle for a violation of tag laws after the driver had parked his car and exited the vehicle. The driver consented to a pat down during which he admitted having illegal drugs on his person. Police arrested the driver, handcuffed him and placed him in the back seat of the patrol car before searching the vehicle and discovering a handgun under the driver's seat. That court concluded that so long as an arrestee is the sort of recent occupant of a vehicle "such as [the driver] was here," officers may search the vehicle incident to the arrest.
Despite previous indications to the contrary (see, State v. Hernandez, supra, at p. 1385), the Louisiana Supreme Court has recently applied Belton in upholding vehicular searches incident to arrest. State v. Canezaro, supra; State v. Huynh, 08-1628 (La.11/10/08), 993 So.2d 1198.
In Louisiana, some Title 32 traffic offenses require the issuance of citations, some allow arrests. State v. Stoutes, supra. In relevant part, the provisions of La. R.S. 32:300 state that it shall be unlawful for the operator of a motor vehicle, while the motor vehicle is operated on a public highway or right-of-way, to possess *654 an open alcoholic beverage container in the passenger area of a motor vehicle. Open alcoholic beverage container means any bottle, can, or other receptacle that contains any amount of alcoholic beverage and is open or has a broken seal, or its contents have been partially removed. Whoever violates the provisions of La. R.S. 32:300 "shall not be taken into custody, but instead shall be required either to deposit his driver's license with the arresting officer or give his written promise to appear." La. R.S. 32:300(C).
Likewise, the relevant provisions of La. R.S. 32:104 provide that no person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required by La. R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. A violation of La. R.S. 32:104, however, is one for which a citation is required. State v. Bellow, 07-824 (La. App. 5th Cir.3/11/08), 982 So.2d 826. See also, La. R.S. 32:57.
In its recent ruling in Virginia v. Moore, supra, the United States Supreme Court addressed a situation involving the offense of driving under suspension. Under Virginia law, the traffic violation required the issuance of a summons/citation in lieu of the arrest of a subject who committed the offense. A search of the defendant incident to the arrest discovered cocaine. The court found that the warrantless arrest did not violate the Fourth Amendment, because it was based upon probable cause of a crime despite the minor nature of the offense. Likewise, the search incident to that arrest was held to be constitutional. The court concluded that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections. Id.
The officers' descriptions of the timing and manner of the arrests of McGraw and Day are not greatly detailed. Significantly, there were two non-arrestable traffic offenses for which McGraw was charged. The record does not reveal that McGraw was arrested for the improper turn violation or that the hydrocodone was found by the officer's search of the vehicle after Day's felony arrest. Thus, we will presume that McGraw's arrest for the traffic offense(s) occurred first and the subsequent search that led to the discovery of the hydrocodone was unrelated to Day's arrest.
Clearly, at the time that McGraw was placed into the patrol car, the officer had probable cause that the two offenses had occurred. Therefore, with the recent ruling in Virginia v. Moore, supra, the arrest[3] of McGraw was constitutionally permissible under the Fourth Amendment. Further, under the Belton/Thornton analysis for a vehicle search *655 incident to arrest, Officer Satre's search of the passenger compartment was likewise a constitutionally permissible search under the Fourth Amendment. The fact that the arrest was in violation of Louisiana's statute requiring a citation-only traffic offense does not make the arrest and search incident thereto unconstitutional under the Fourth Amendment.
Regarding the Louisiana constitution's search and seizure provision and its invasion of privacy protection, defendant makes no argument concerning a violation under state constitutional law. Nevertheless, despite the violation of the state statutes regarding this arrest and any possible Louisiana constitutional breach that might be urged, this court will not impose any exclusionary rule to remedy such violation without precedent from our state's highest court.
Finally, even were we to conclude that a constitutional violation of McGraw's rights had occurred, the evidence would nonetheless be admissible under the "inevitable discovery" doctrine. Under this doctrine, evidence found as a result of a violation of defendant's constitutional rights would be admissible if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The "inevitable discovery" doctrine has been followed by Louisiana courts. State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, cert. denied, ___ U.S. ___, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. Nelson, 459 So.2d 510 (La.1984), cert denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Drake, 31,528 (La.App.2d Cir.1/20/99), 733 So.2d 33, writ denied, 99-1060 (9/24/99), 747 So.2d 1117; State v. Fontenot, 01-0178 (La.App. 4th Cir.8/8/01), 795 So.2d 410. In this matter, because officers also developed probable cause to arrest Day as he was removed as an occupant of the car, they were authorized under New York v. Belton, supra, to conduct a search of the entire passenger compartment of the vehicle incident to Day's arrest. In doing so, the police would have inevitably discovered the hydrocodone in the center console. Thus, "there is no nexus sufficient to provide a taint and the evidence is admissible." Nix v. Williams, 467 U.S. at 448, 104 S.Ct. 2501.
In his third assignment of error, McGraw argues that evidence of Day's arrest for possession of cocaine and the marijuana found in the vehicle prejudiced the verdict by showing the defendant's bad acts.
During trial, defense counsel objected to the officer's testimony relating to Day's arrest and the seizure of the marijuana in McGraw's vehicle on the grounds that the evidence constituted other crimes evidence. The state argued that the evidence formed part of the res gestae. The trial court overruled McGraw's objection and allowed introduction of the evidence on the grounds that it formed an integral part of the transaction.
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La.1993). This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126, 128 (La.1973). However, evidence of other crimes may be admissible if the state establishes an independent and relevant reason, e.g., when it relates to *656 conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Roberson, 40,809 (La. App.2d Cir.4/19/06), 929 So.2d 789. Even when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403; State v. Jacobs, 99-0991 (La.5/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002); State v. Hatcher, 372 So.2d 1024, 1033 (La.1979).
A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Cooks, 36,613 (La. App.2d Cir.12/4/02), 833 So.2d 1034; State v. Butler, 30,798 (La.App.2d Cir.6/24/98), 714 So.2d 877, writ denied, 98-2217 (La.1/8/99), 734 So.2d 1222. Evidence of other crimes, wrongs or acts may be introduced when it relates to res gestae, that is, conduct that forms an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074; State v. Coates, 27,287 (La.App.2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365. The test to determine "integral act" evidence is not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inference, whatever they may be, necessary to reach an honest verdict. State v. Gaddis, 36,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258, cert. denied, 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005).
As discussed above, the central issue in this case is whether McGraw had constructive possession of the hydrocodone pill. Thus, issues of McGraw's knowledge and intent were necessary to the state's proof. Both the arrest of Day for possession of crack cocaine and the discovery of the marijuana in the driver's door occurred simultaneously with the discovery of the hydrocodone. These facts formed an integral part of the act which forms the basis for these proceedings. Moreover, facts relating to the existence of other drugs in the car have probative value and were relevant to issues of McGraw's intent to possess, his exercise of dominion and control and knowledge of the drug. This evidence provided narrative completeness to the state's case and presented the full context of facts which were necessary for the jurors' ultimate determination of McGraw's guilt. From this evidence, the jury was free to infer that Day's possession of cocaine exculpated McGraw as he might have also placed the pill in the center console. Likewise, from this evidence the jury could have inferred McGraw's friends' joint enjoyment of illegal drugs. The trial court recognized the potential prejudicial impact of Day's arrest on the jury and allowed both Officer Satre and Corporal Crouch to explicitly state that McGraw was not arrested for cocaine possession. See State v. Colomb, supra (in which the court held that evidence of marijuana, discovered with facts giving rise to a possession of a firearm by a convicted felon prosecution, was permissible). For these reasons, we find no merit to this argument.
*657 McGraw's final argument concerns the constitutional excessiveness of the imposed sentence. Specifically, McGraw contends that the trial court improperly considered both his prior criminal history without regard to other factors and a pending armed robbery charge when it sentenced the defendant to the maximum statutory sentence of two-and-one half years.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La. App.2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La. App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir.11/1/06), 942 So.2d 658, writs denied, 06-2768, 06-2781 (La.6/22/07), 959 So.2d 494; State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541. However, this maximum sentence rule is more difficult to apply in contraband possession cases than in cases involving violent offenses, and past records of drug offenses weigh heavily in the decision to uphold the imposition of even maximum sentences. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 08-0175 (La.6/20/08), 983 So.2d 1272; State v. Russell, 40,526 (La.App.2d Cir.1/27/05), 920 So.2d 866, writ denied, 06-0478 (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App.2d Cir.5/9/07), 956 So.2d 779, writ denied, 07-1442 (La.4/4/08), 978 So.2d 324.
The trial court in this case considered McGraw's past criminal history prior to imposing the maximum two and one-half year sentence. Specifically, the court noted that McGraw had two felony convictions in 1991 and 1996 involving cocaine and that after those offenses, he had numerous arrests. The court determined that as an adult, McGraw had a consistent history of committing felonies. The trial court stated that the pending armed robbery charge played no role in its sentencing determination.
We find no constitutional error in the imposed sentence. McGraw has a continued history of drug-related activity. He has obviously failed to benefit from prior *658 probationary treatment and leniency in sentencing. These facts and McGraw's continued disregard for the drug laws of this state justify the maximum sentence which is appropriately tailored to this defendant.

Conclusion
For the foregoing reasons, McGraw's conviction and sentence are affirmed.
AFFIRMED.
DREW, J., concurs with written reasons.
DREW, J., concurring.
The majority's opinion is excellent, and I join with it in all respects, adding these few observations, primarily about the current (and evolving) state of Louisiana's law of vehicular search incident to arrest.

I. Avoiding Temptation

The U.S. Supreme Court has become selective in its application of the exclusionary rule, even in situations where officers have violated guidelines set by the court itself.[1] Now the court has ruled that searches incident to arrest ("SITA") made for violations of offenses allowing only citation under state statutes may produce admissible evidence, under the Fourth Amendment, so long as probable cause existed as to the commission of a criminal offense. Virginia v. Moore, ___ U.S. ___, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).
If an officer seeks an evidentiary advantage by unlawfully arresting for the violation of a statute mandating the issuance of a citation, that officer is making a serious mistake. A police officer who willfully violates either statutory or jurisprudential guidelines will undoubtedly be subjected to the corrective systems in place today (internal affairs investigations, civil rights lawsuits, etc.), whether or not the evidence is suppressed. Peace officers must follow the law.

II. Legal Requirement for a Traffic Stop

Only reasonable suspicion, not the more difficult burden of probable cause, is required to make any stop, including a traffic stop.[2] Six federal circuits[3] have reaffirmed this precept since the rendering of Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996), a case with certain language, susceptible to confusion, on this issue, namely, "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."
My interpretation of the burdens which must be satisfied to justify traffic stops is as follows:
 If an officer observes a traffic violation, then probable cause does, in fact, exist that a crime is occurring. The officer may stop the vehicle and immediately issue the citation. If an arrest is allowed for the observed offense,[4] then SITA would apply as to the driver and possibly to the *659 passenger compartment[5] of the vehicle, together with all containers located within the passenger compartment.[6]
 Merely making a brief traffic stop, however, requires only the lesser burden of reasonable suspicion of criminal activity. In this situation, the officer would then promptly have to confirm or deny his suspicion of criminality. If probable cause quickly develops during a stop, then a citation may issue or an arrest can be made, depending upon what crime is violated. Otherwise, the motorist should be allowed to depart.

III. Two Recent Per Curiams Relative to SITA

Almost 40 years ago, the United States Supreme Court provided law enforcement in this country with a clear rule that a contemporaneous incident of a lawful arrest was the allowance that the officers could search the arrestee, including his wing span and lunge space, for weapons or evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
Four years later, the SITA concept was clarified further, in a case involving a motorist who was arrested. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
Eight years later, the court established a clear rule that peace officers, incident to the arrest of a motorist, were entitled, as a contemporaneous incident of that arrest, to search the entire passenger compartment, including any containers therein, for weapons or evidence. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
The following year, by a 4-3 vote, the Louisiana Supreme Court, in dicta, declined to follow Belton, perceiving that searching a passenger compartment, incident to arrest, was violative of our Louisiana Constitution, in a situation where the arrestee was shackled and locked in the patrol car at the time of the search incident to his arrest. State v. Hernandez, 410 So.2d 1381 (La.1982). Officers in other states have for decades utilized the evidentiary and protective consequence of vehicular SITA, as contemplated by Belton. Louisiana peace officers, until the last two years, have not been allowed the same protection and evidence-gathering capability, primarily because of Hernandez.
In 2004, the U.S. Supreme Court ruled that the doctrine of search incident to an arrest could apply to the passenger compartment of a vehicle, even in a situation where the arrestee was already out of the vehicle when initially approached by the officer, so long as elapsed time factors (since the subject had been in the car) and distance (distance from the car) factors were minimal. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004).
Interestingly, at the moment when the officer searched Thornton's passenger compartment incident to arrest, Thornton was shackled and locked in the police car. This is factually similar to the situation of Hernandez at the time Gonzales Corporal Pasqua searched his passenger compartment incident to arrest, over two decades before.[7]
*660 Recently, some scholars have argued that application of the privacy language in the Louisiana Constitution should have always been limited solely to communications, instead of serving as a "launching pad" for judicial policy-making in the '70s and '80s.[8]Hernandez was listed as a prime example of making policy instead of interpreting the law.
In 2007, in a per curiam opinion, the Louisiana Supreme Court cited Belton in approving the search of the passenger compartment of a pickup truck, incident to the arrest of two former occupants of the truck, even though each of the subjects was shackled and locked in the patrol car at the moment of the search. State v. Canezaro, 2007-668 (La.6/1/07), 957 So.2d 136. The Hernandez case was not discussed.
Recently, in another per curiam opinion that also did not distinguish Hernandez, the Louisiana Supreme Court cited Belton as justification for the contemporaneous search of a passenger compartment incident to the arrest of a former occupant of a vehicle. State v. Huynh, XXXX-XXXX (La.11/10/08), 993 So.2d 1198.
My conclusion, until corrected, is that Belton, Thornton, Canezaro, and Huynh now control Louisiana vehicular searches incident to arrest. I further conclude that Hernandez is out, at least to the extent that it has heretofore been construed as limiting the application of Belton in this state.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.
NOTES
[1] McGraw subsequently entered a plea of no contest to the other three misdemeanor charges. The imposed sentences were subject to time served and imposed concurrently to the attempted possession of hydrocodone sentence. A habitual offender bill charging McGraw as a fourth felony offender was filed on April 23, 2008, but the disposition of the habitual offender bill is not included in the record.
[2] See further discussion of the Louisiana constitutional provision in State v. Jackson, 00-0015 (La.7/6/00), 764 So.2d 64.
[3] Even though the officer did not testify that he informed McGraw that he was under arrest, he acknowledged his intention to arrest after discovery of alcohol in the vehicle. La. C.Cr.P. 201 defines arrest as "the taking of one person into custody by another." "It is the circumstances indicating intent to effect an extended restraint on the liberty of the accused, rather than the precise timing of an officer's statements: `You are under arrest,' that are determinative of when an arrest is actually made." State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. Moreover, under Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and State v. Sherman, 05-0779 (La.4/4/06), 931 So.2d 286, where the formal arrest follows quickly on the heels of the challenged search, it is not particularly important that the search precede the arrest rather than vice versa.
[1] Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), narrowly refused to suppress evidence seized pursuant to a search warrant for illicit drugs, when the police clearly violated the court's unanimous "knock-and-announce" rule established four years before, in United States v. Banks, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003).
[2] See State v. Stoutes, 43,181 (La.App. 2 Cir. 4/2/08), 980 So.2d 230, fn. 14.
[3] See Stoutes, supra, fn. 15.
[4] Violations of some offenses in Title 32 allow the offender to be arrested. La. R.S. 32:57(C)(1), (E), and (F); R.S. 32:402; R.S. 32:412(G); R.S. 32:415; R.S. 32:861.
[5] Depending upon how far the driver is from the car and how long since the driver had been in the car, at the moment of arrest and search incident to the arrest.
[6] New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); State v. Canezaro, 2007-668 (La.6/1/07), 957 So.2d 136.
[7] One clear distinction: During the SITA, Thornton was still at the scene. At the same point, Hernandez was being driven to the station for booking.
[8] See John S. Baker Jr. and Jason Dore, The Louisiana Supreme Court: Interpreting the Law or Making Policy?, 13-14 (Washington, D.C.: The Federalist Society and Baton Rouge, La.: Foundation for Self-Government, 2008).