GARRETT, J.
[iThe defendant, Jakeith L. Francis, was found guilty by a jury of one count of attempted possession of a Schedule III controlled dangerous substance (“CDS”) (acetaminophen with codeine), in violation of La. R.S. 40:968(C) and La. R.S. 14:27, and one count of attempted possession of a Schedule II CDS (methamphetamine), in violation of La. R.S. 40:967(C) and La. R.S. 14:27. He was sentenced to serve 12 months at hard labor on each count, with the sentences to be served concurrently, and was given credit for time served. He appeals, claiming there was insufficient evidence to support his convictions. For the following reasons, we affirm the convictions and sentences.
FACTS
On February 12, 2015, Francis was stopped for speeding by Officers Joseph Bassett and Josh Owen of the Shreveport Police Department. Francis’s girlfriend, Euradell Lewis, was a passenger in the car. Officer Bassett smelled a strong odor of marijuana and removed Francis and Lewis from the vehicle. One of the officers noticed a bulge in Lewis’s clothing. She gave the officer a plastic bag containing various drags. According to Lewis, when the officers activated their lights to pull Francis over, he removed the bag from his pocket, threw it into her lap, and told her to hide it.
Both Francis and Lewis were arrested. Francis was originally charged with possession of acetaminophen with codeine, possession of marijuana, second offense, and possession of Ecstasy (“MDMA”). The bill of information was later amended to charge him with possession of acetaminophen with codeine and possession of methamphetamine. He was 1 gtried by jury on February 2, 2016, and was convicted of the responsive verdicts of attempted possession on both counts. He was sentenced as set forth above. On appeal, he claims the evidence was not sufficient to support his convictions.
LEGAL PRINCIPLES
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2 Cir. 1/9/08), 974 So.2d 181, writ *1216 denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086; State v. Crossley, 48,149 (La.App. 2 Cir. 6/26/18), 117 So.3d 586, writ denied, 2013-1798 (La. 2/14/14), 132 So.3d 410. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297; State v. Crossley, supra.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct | ¡¡evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,-786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299; State v. Crossley, supra.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La. 3/28/03), 840 So.2d 566, 2002-2997 (La. 6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004); State v. Crossley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Randle, 49,952 (La.App. 2 Cir. 6/24/15), 166 So.3d 465.
An accomplice is a competent witness to testify against his co-perpetrator even if the prosecution offers him inducements to testify; these inducements only affect the witness’s credibility. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913; State v. Jetton, 32,893 (La.App. 2 Cir. 4/5/00), 756 So.2d 1206, writ denied, 2000-1568 (La. 3/16/01), 787 So.2d 299. See also State v. Wilhite, 40,539 (La.App. 2 Cir. 12/30/05), 917 So.2d 1252, writ denied, 2006-1078 (La. 11/9/06), 941 So.2d 35. The credibility of an accomplice’s testimony is not within the province of the court of appeal to Rdecide. Rather, credibility evaluations are within the province of the jury as trier of fact. The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Eason, supra; State v. Casey, 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
Francis was convicted of the responsive verdicts of attempted possession of a Schedule III CDS, and attempted possession of a Schedule II CDS. La. R.S. 40:968(C) provides in relevant part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule III unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978 or R.S. *1217 40:1239, while acting in the course of his professional practice or except as otherwise authorized by this Part.
La. R.S. 40:967(C) states in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27. An attempt is a separate but lesser grade of the intended crime; and any person may be | ^convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. La. R.S. 14:27(C); State v. McNair, 597 So.2d 1096 (La. App. 2d Cir. 1992), writ denied, 605 So.2d 1118 (La. 1992).
The elements of attempted possession of a CDS require a person to knowingly or intentionally do or omit an act for the purpose of and tending directly toward the accomplishing of the possession of the CDS, without a valid prescription or in the absence of an enumerated professional practice. La. R.S. 14:27; La. R.S. 40:967(C); La. R.S. 40:968(C). See State v. McGraw, 43,778 (La.App. 2 Cir. 12/10/08), 1 So.3d 645, writ denied, 2009-0317 (La. 11/6/09), 21 So.3d 297; State v. Holloway, 37,021 (La.App. 2 Cir. 5/16/03), 847 So.2d 200, writs denied, 2003-1720 (La. 12/19/03), 861 So.2d 558, 2003-1929 (La. 12/19/03), 861 So.2d 560.
Attempted possession of a controlled dangerous substance may be proved by constructive possession. State v. Taylor, 39,651 (La.App. 2 Cir. 4/6/05), 900 So.2d 212; State v. Daniels, 614 So.2d 97 (La. App. 2d Cir. 1993), writ denied, 619 So.2d 573 (La. 1993). Constructive possession is shown when the state proves that the contraband was within the defendant’s dominion and control and that the defendant had knowledge of its presence. See State v. Toups, 2001-1875 (La. 10/15/02), 833 So.2d 910; State v. McGraw, supra.
DISCUSSION
At the jury trial, Bassett, one of the officers who stopped Francis, testified that he was patrolling in the Ingleside area of Shreveport on the afternoon of this offense, when he noticed a car traveling at 40 mph in a 25 mph zone. He activated the lights on his patrol car and pulled the driver llover. While approaching, Officer Bassett smelled a strong odor associated with high-grade marijuana coming from the stopped vehicle. He asked the driver, Francis, to get out of the car. Francis was searched for weapons and put into the police car. He was wearing a hat with the word “Kush” on it, a term for high-grade marijuana. Eventually, the passenger, Lewis, was also asked to get out of the car and Owen searched the vehicle while the officers waited to determine if there were any outstanding warrants for Francis or Lewis. An open container of alcohol was found in the car. Francis and Lewis were both subject to arrest for violation of the open container law.
The officers noticed a bulge in Lewis’s pants. Officer Bassett told her if she was arrested and had drugs on her person that were discovered while she was being booked into jail, she could also be guilty of *1218 introducing contraband into a penal facility. Lewis gave the officers the bag containing the CDS, explaining that the drugs were not hers and that Francis made her hide them for him. Officer Bassett stated that, based upon Lewis's behavior, he believed her.
A lengthy video recording of the traffic stop and arrest was played for the jury and introduced into evidence. We have reviewed the video, which corroborates the testimony of Officer Bassett. It also captures numerous comments made by Francis while he was in the patrol car. Among these was his observation that the officers were trying to play him and Lewis against each other. He also said that if the officers would let Lewis go, he would take the charge.
Randal Robillard, an expert in forensic chemistry with the North Louisiana Crime Lab, testified regarding the analysis of the drugs turned |7over by Lewis, which included marijuana, acetaminophen with codeine, and methamphetamine.
Lewis testified on behalf of the state. She had been attending Louisiana State University in Shreveport for two and one-half years, majoring in criminal justice. At the time of this offense, she had been in a relationship with Francis for five months, but they did not live together. Francis picked Lewis up on the afternoon of February 12, 2015, after she got out of class. He was driving a car that Lewis had rented. As they were traveling, Francis noticed that a police car pulled in behind him. According to Lewis, Francis took a clear bag out of his pocket, which was “wrapped up tight,” threw it into her lap, and told her to “hold it for me, stuff it.” She said this meant for her to put it in her clothes. Because she was somewhat fearful of Francis, and also panicked, she complied and put the bag in her pants. After the police stopped the car, Lewis said she sat in the vehicle for several minutes before the police asked her to get out. One of-the officers smelled marijuana and asked if there was anything illegal in the car. She told him “no” because she was scared. The officer told her he could smell marijuana and noticed the bulge in her pants. He told her to pull it out, which she did. She testified that she does not smoke marijuana or take pills and denied that the drugs belonged to her.
Lewis testified that she had no prior criminal record and that Francis wanted her to “take the charge” because he did have a prior record and thought he was facing a significant sentence if convicted. At some point after they were arrested, Lewis claimed they got into a heated argument that became physical, and she ended the relationship. She reiterated that she was 100% certain that Francis gave her the drugs to hide in her pants. She stated Isthat her charges were still pending and that she was not granted immunity in exchange for her testimony.
Francis testified on his own behalf and presented a different version of the events. According to Francis, he had been in a relationship with Lewis for nine months and she had lived with him at his residence for seven months. He claimed she moved in after an altercation with her mother. Francis acknowledged that marijuana had been smoked in the vehicle earlier in the day. He claimed it was not uncommon for Lewis to smoke marijuana and that they had smoked together in the past. He said that Lewis drove .the car to school and came to his residence when her classes were over. They decided to go get her something to drink, but he did not drink. Later, they were going to spend the night at a local casino. Francis claimed he had been in the car eight to 10 minutes when he was stopped by the police and he was not speeding.
*1219 Francis saw one of the officers grab at Lewis’s pants and ask her what the bulge was. Francis insisted that the drugs were not his and he did not know that Lewis had drugs with her. He denied giving her the bag of drugs to hide. Francis stated that, if he had thrown drugs into Lewis’s lap, she should have told the officers that immediately when they walked to the car. Francis said that when he saw Lewis remove the plastic bag from her pants, he thought it was just marijuana. He said, “All I know her to smoke is marijuana so I never knew about any pills or anything like that.” He was then asked if he had ever seen Lewis take pills. He responded he had seen her take Ecstasy, but not codeine. Francis claimed that' he had last used Ecstasy in 2013. He acknowledged that, while in the back of the police car, he offered to take the charges, but he denied confessing that the drugs were |flhis. On cross-examination, Francis admitted to a 2003 conviction for possession of cocaine and a 2008 aggravated battery conviction.
Lewis testified again on rebuttal and disputed many of the statements made by Francis. She denied that she lived with Francis or that she had an altercation with her mother. She stated she had been in a relationship with Francis for only five months, not nine months as he claimed. She denied smoking marijuana frequently, as claimed by Francis, and denied ever taking Ecstasy or codeine. She also denied knowing that Francis had a hotel room at a casino or that they planned to spend the night there. Lewis reiterated that Francis drove her to school on the day of their arrest and picked her up when school was over. She said that Francis wanted to use the car that day. She insisted that when they were stopped by the police, Francis threw the drugs into her lap and told her to hide them. She panicked and did as he said.
Tamila Lewis, Lewis’s mother, also testified on rebuttal. She said she did not have an altercation with her daughter and her daughter did not live with Francis. She asserted that her daughter was living with her when this incident occurred and that she had never met Francis.
The jury obviously believed the testimony given by Lewis over that offered by Francis. That credibility determination is entitled to great deference. As stated above, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Lewis’s version of this incident was consistent throughout. She testified that Lewis had possession of the drugs, threw them into her lap, and ordered her to hide them from the police. Lewis’s testimony was sufficient | into show that Francis knowingly and intentionally committed an act for the purpose of and tending directly toward the accomplishing of possession of the Schedule II and Schedule III CDS at issue here. Her testimony also established that the drugs were in the dominion and control of Francis and that he had knowledge of their presence. This was sufficient evidence to show, beyond a reasonable doubt, all of the necessary elements of attempted possession of both CDS drugs.
CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Jakeith L. Francis, for one count of attempted possession of a Schedule III CDS (acetaminophen with codeine), and one count of attempted possession of a Schedule II CDS (methamphetamine).
AFFIRMED.